In re CHICAGO RAPID TRANSIT CO.

MALLOY et al. v. CHICAGO RAPID TRANSIT CO. et al.

No. 6240.

Circuit Court of Appeals, Seventh Circuit.
Nov. 10, 1937.

Samuel A. Ettelson, Edward C. Higgins, and Erwin M. Treusch, all of Chicago, Ill., for appellants.

George I. Haight, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

834

EVANS, Circuit Judge.

The precise question before us may be stated thus—Was the employment of Schuyler, Weinfeld & Hennessy by Commonwealth Edison (a large creditor and the owner of over half of debtor's common stock) such as to require a court to veto Trustee Sprague's request to employ them as his counsel?

In determining this question we agree with the District Court that employment of counsel by trustee, in view of General Order 44, as amended in 1933, 11 U.S.C.A. following section 53, is a responsibility of the trustee in the first instance. The court may exercise merely a veto power.

General Order 44 reads as follows:

"No attorney for a receiver or a trustee shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver or trustee, stating the name of the counsel whom he wishes to employ, the reasons for his selection, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other parties to the proceedings, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, trustee, or any creditor in the matters upon which he is to be engaged, and that his employment would be to the best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee shall have represented any interest adverse to the receiver, trustee, or any creditor in any matter upon which he is employed for such receiver or trustee, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney.

"Nothing herein contained shall prevent the court, in proceedings under section 77

or section 77B of the Act (11 U.S.C.A. §§ 205 and 207) from authorizing the employment of attorneys who are attorneys of the corporation, or associated with its legal department, in connection with the operation of the business of the corporation by a trustee or trustees under subsection (c) of section 77 and subsection (c) of section 77B, (11 U.S.C.A. §§ 205 and 207) when such employment is found by the court to be in the public interest in relation to such operation and is not adverse to the interests of the trustee or trustees or of the creditors of the corporation."

The court would therefore ordinarily, on the verified petition of the trustee accompanied by the affidavit of counsel showing an absence of disqualification, approve the request of the trustee. In other words, the court does not name counsel for the trustee. This may or may not be entirely wise, but it is the fair implication of Order 44.

Was the firm named by trustee to serve as counsel for trustee qualified to so act? Perhaps it would be better to say our inquiry is directed to whether Schuyler, Weinfeld & Hennessy are disqualified because of their previous employment by Commonwealth Edison to act as counsel for the trustee of debtor.

The District Court has promulgated rules defining the qualifications of counsel who may represent the trustee.

Pertinent provisions of Rule 8 of the District Court are herewith set forth:

"No attorney shall be retained by the Receiver or Trustee unless his affidavit, annexed to the petition of the Receiver or Trustee, shall show, to the best of his knowledge, in addition to the matters required by General Order XLIV, his business, professional or other connection, during one year prior and up to the date of the affidavit, with the bankrupt, the bankrupt's attorney, any creditor or any other person interested in the estate.

"No attorney shall be so retained if in the proceeding he has appeared for or acts for or holds proxies for the petitioning or other creditors or for any other person interested in the estate; nor shall his retention continue or he be paid for services out of the estate if during the proceeding he therein act for or hold proxies for, or if for services therein he accept compensation from, any such creditor or person. The petition of the Receiver or Trustee for the retention of an attorney shall state at whose instance, if any, such retention is suggested and the reasons for acting thereon.

"This rule shall not prohibit the Receiver or Trustee from retaining as special counsel any attorney who at the time of the filing of the petition in bankruptcy was the attorney for the bankrupt in litigations or other matters then pending on behalf of the bankrupt. No such counsel shall be so retained except on order of the Court setting forth the terms and conditions of such retainer.

"At the end of each quarterly calendar period all receivers shall submit to the Court written reports showing in detail how this rule is being applied."

▮ To carry out its purpose we must give this rule a liberal construction. We therefore reject as too narrow appellees' position that the adverse interests must, in all instances, be in the same proceedings.

Deleting the unimportant portions of the first two paragraphs, they would read:

"No attorney shall be retained by the * * * trustee unless his affidavit * * * shall show * * * his professional connection during one year prior and up to the date of the affidavit with any creditor interested in the estate.

"No attorney shall be so retained if in the proceeding he has appeared for or acts for * * * the petitioning or other creditors or for any other person interested in the estate; * * *."

▮ Moreover, we are satisfied that Rule 8 and Order 44 do not embrace all cases of disqualification. They are controlling as far as they go. However, counsel may be disqualified even though his relations are not "professional connections" which existed during the year previous to the debtor's adjudication. As an equally sound proposition, it seems to us, the character of the professional connection of counsel and a creditor, during the year immediately preceding the adjudication in bankruptcy, must be examined, and in some instances at least the court may well find that such relationships do not bar the employment. To illustrate, if X were employed to collect an account, an unimportant, undisputed claim, or to draw a conveyance concerning which there was no controversy and, though calling for some legal ability, was clerical in its nature, and the transactions were entirely completed, we can well conceive of instances where the employment by the trustee of said counsel would not be preju-

dicial to the estate nor raise any question of legal ethics.

█ The firm of Schuyler, Weinfeld & Hennessy complied with the rules of the District Court and filed an affidavit wherein it attempted to show its disinterestedness and its qualifications to serve the trustee of the estate loyally and with ability. One of the partners said in this affidavit:

"That to the best of his knowledge, the said law firm, *during one year prior to and up to the date hereof,* has represented Commonwealth Edison Company as counsel in special matters, but that such matters have no relation to and do not involve any matter in this proceeding or any matter which may be involved herein, or in which said law firm is to be engaged."

This statement without further explanation as to the character of the employment should, we think, have caused the trustee to refrain from employing the counsel who was employed by the Commonwealth Edison Company.

Appellees attempt to reconcile this sworn statement with the testimony of other partners to the effect that the employment terminated February 1, 1937, one month before this affidavit was made. Counsel asks us to construe the statement that said law firm "during one year prior to and up to the date hereof (March 4)" meant some time during the year immediately preceding March 4, said firm was employed by Commonwealth Edison. We can give the language no such construction and do justice to its fair intendment.

█ Nor can we accept the statement of the other two partners that their services were severed on February 1, 1937, and still agree that they were immediately qualified to represent the trustee against the Commonwealth Edison on March 4, 1937. Even though their services were temporarily or permanently severed on February 1, 1937, the record, we think, construing the general rule 8 as we must, clearly shows their lack of qualifications and the impropriety of Mr. Sprague's attempting to employ them.

According to the admitted testimony, they, as attorneys for the receiver and as attorneys for the temporary trustee, received "on account" $2,000 a month, and they rendered services in opposition to the claim of the Commonwealth Edison Company. At the same time they were employed by the Commonwealth Edison Company as "special attorneys for them" and

"had a retainer for 15 or 20 years." There was support for the conclusion that they received in all at least $200,000 from Commonwealth Edison in the 20 years preceding their employment by Mr. Sprague. And they were to be reimbursed for their "out of pocket expenses."

Mr. Schuyler's conception of proper legal ethics may be found in the following statement:

"We have received money monthly and continuously from the Edison Company up to the date mentioned for whatever legal service we were called upon to perform. *If a client doesn't object, I can't see why a lawyer shouldn't take the law business of any kind against a client from whom he is continuously receiving an annual retainer.* I am familiar enough with the Canons of the American Bar Association to know that our firm doesn't do unethical things."

While unable to find any canon of legal ethics which would permit a lawyer to take "law business of any kind" against a client from whom he is constantly receiving an annual retainer of $10,000 (See Canon. 6, American Bar Association), that statement does not contain all of the facts present in the case before us.

It appears in the case before us that not only did one client which was paying this firm a retainer of $10,000 not object, but it was evidently willing that the debtor should have the services of its lawyer. The debtor was a public utility company; Commonwealth Edison owned the majority of its stock. When Commonwealth Edison sat on one side of the table to transact business with its adversary, the debtor, who sat on the opposite side of the table, it was rather important that the counsel who sat at the elbow of the debtor know whom he was representing. When Commonwealth Edison was seeking to establish preference for a $2,000,000 claim, it was highly necessary from the standpoint of other creditors, that the debtor be represented by one who was not in any way embarrassed by his present or past employment by the creditor.

In short, it was absolutely necessary that the adversaries and their counsel meet on terms of equality. Henderson v. Binkley (C.C.A.) 74 F.(2d) 567, 568; Geddes v. Anaconda Mining Co., 254 U.S. 590, 41 S. Ct. 209, 65 L.Ed. 425.

Counsel for appellees, both on oral argument and in written brief, takes a highly ethical position and one which is in complete harmony with the letter and spirit

of the orders in bankruptcy (11 U.S.C.A. following section 53) and the rules of the District Court.

Admittedly, he says, attorneys can not at the same time serve two masters with opposing views and conflicting interests. He argues, however, that the Schuyler, Weinfeld & Hennessy employment by Commonwealth Edison Company was of a nature that did not disqualify them from representing the debtor. This last position presents the crucial question in the case. What are the facts? What kind of employment would disqualify an attorney from serving a trustee in a case like the one before us?

■ Schuyler, Weinfeld & Hennessy filed an affidavit under Rule 8. It showed employment during the year immediately preceding the bankruptcy by a large creditor of the debtor. It was therefore incumbent on them to show affirmatively that their employment by the creditor did not disqualify them from acting as counsel for the trustee of the debtor. The affidavit before us fails to make such a showing.

On the hearing several of the partners testified. Their employment was set forth in a letter which we quote verbatim:

"January 14, 1936.

"Dear Mr. Schuyler:

"The purpose of this letter is to confirm our verbal understanding with you to the effect that you and your firm have been retained as special counsel for the calendar year ending December 31, 1936, to represent Commonwealth Edison Company and Public Service Company of Northern Illinois and their respective subsidiaries and affiliated companies, in matters pertaining to their relations with the public. In carrying on your work, we will appreciate your cooperating with our Public Relations Committee, of which Mr. Britton I. Budd is Chairman.

"Your fee for the services above outlined for the year 1936 are to be at the same rate as you are now receiving, viz.: $10,000.00 for Commonwealth Edison Company, $3,000.00 for Public Service Company of Northern Illinois.

"If at any time you have out-of-pocket expenses which are not applicable to any particular company but affect the general interests of all, statements in that regard should be rendered jointly to the two principal companies above named.

"Yours very truly,

"James Simpson, *Chairman*."

Their testimony as to the nature of their work is not particularly illuminating. The services rendered were described as of "public relations in character." One partner testified that "it was no part of our retainer to represent Edison Company in its relations with the Chicago Rapid Transit Company, a customer of the Edison Company." The letter of employment, however, called for services to be rendered to the Commonwealth Edison Company *and its subsidiaries*. Commonwealth Edison Company owned 60% of the debtor's common stock.

Witness could not recall any services rendered in 1936 of a legislative nature. In fact there was an absence of recollection of specific services rendered during the preceding year. This partner did recall that he had read the master's report on the claim of Commonwealth Edison against the debtor, and agreed with the position of other counsel who were opposing the claim for preference. He could not recall whether a separate brief had been filed by their firm or not (the record shows the filing of what is termed "A statement on behalf of A. A. Sprague, Receiver" on appeal, allegedly in opposition to the Commonwealth Edison's claim for a preference).

Another member of the firm, Mr. Schuyler, testified:

"I have never been attorney for the Edison Company. I have had a special retainer for a number of years. I have been one of the attorneys for the Edison Company. I have been a special attorney for them. I should say we have had a retainer for fifteen or twenty years. The letter indicated * * * the scope of our employment."

■ The field of activities of the legal profession has broadened in the last fifty years. It is asserted, though erroneously, that almost any activity is "practicing law." Whatever doubt there may be as to the proper limits of the field of legitimate legal activity, there can be no question that using influence or securing influence to be used upon legislative bodies is not within that field. We must and do assume that the legal services rendered by this law firm were not of such a character. In other words, we must reject any argument that the services contracted for by Commonwealth Edison Company were not proper, legitimate, legal service, especially in view of the affidavit which the partner filed in this case to support the trustee's petition.

Assuming that the qualifications of Schuyler, Weinfeld & Hennessy are to be determined solely by the controversy over Commonwealth Edison's claims against the debtor, we have sought to apply the following tests which, though not conclusive, appeal to us as rational and illuminating.

If Sprague were acting for himself, a debtor, instead of for himself as trustee of a debtor, and was resisting a two million dollar claim, would he employ the attorney for the creditor (although his employment be in other matters) to represent him? Would the members of the Bar of Chicago, that is, the group who believe the practice of law is a profession and not a business, accept employment by a debtor when they were regularly employed (at an annual retainer of $10,000 per year) by the creditor? Our answer to both questions must be in the negative.

We are satisfied, however, that the disqualifications of counsel are not to be measured solely by the fact that they were employed by a large creditor the status of whose claim was involved in doubt and dispute, but we must consider the nature of the proceedings wherein the services are to be rendered.

They were to be employed by a trustee in a section 77B bankruptcy proceeding.

The debtor was adjudged a bankrupt under section 77B of the Bankruptcy Act. It was seeking to reorganize. Sprague is not a receiver in an equity suit, but a trustee in a bankruptcy proceeding under section 77B. The purpose of such a proceeding is to reorganize the debtor. The duty of the trustee is to advance such reorganization. Success in large part is measured by the speed with which such proceedings progress and their final consummation.

In the proceedings for reorganization of the debtor, we find there are creditors whose claims aggregate nearly one hundred million dollars. Some are secured; others are not. Some have preference, or a claim for preference; others do not. There are stockholders, common and perhaps preferred.

When the plan of reorganization is finally submitted to all security holders there may be and probably will be a sharp conflict of interest between stockholders and secured creditors, between unsecured creditors and secured creditors, between unsecured creditors and stockholders. It is not easy to reconcile these conflicting interests and bring them into harmonious support of a plan of reorganization. Experience has abundantly established this to be so. Much depends upon the status, the standing and the character of the trustee and his counsel. When unsecured creditors have long gone without interest they grow impatient and mistrustful. Any plan which reduces their claims is opposed. The motives of those who propose or advocate such a reduction, are impugned, at times most unjustly. It becomes the duty of the trustee and of his attorneys not only to be impartial and free from the influence of any secured holder, but *the other security holders must have faith and confidence in their impartiality and independence.*

In the proposal and adoption of a plan it may be necessary to institute proceedings to entirely eliminate the common stockholder. If it be shown that the assets of the debtor do not equal the amount of the debts, those security holders represented by stock certificates may be entirely wiped out. Section 77B(b) (4), Bankruptcy Act, 11 U. S.C.A. § 207(b) (4). Likewise, the trustee and his counsel may have the preliminary duty of determining whether such steps should be taken. If this be done, the control of the debtor passes from Commonwealth Edison into the hands of the secured creditors. In making this decision it is of the utmost importance that Trustee Sprague and his counsel act with but one purpose in mind—the best interests of the creditors. They must be uninfluenced by the wishes of Commonwealth Edison.

The employment by the trustee of counsel who, for years, have represented one large creditor and controlling stockholder is not conducive to the promotion of confidence in other security holders.

In Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 147, 73 L.Ed. 243, Chief Justice Taft, speaking for the court on the subject of employment of counsel by trustees, said:

"Many abuses have occurred in the bankruptcy practice and none is more frequent than that by which the attorney for petitioning creditors becomes counsel for the trustees subsequently appointed. This mingling of interests, frequently conflicting, is generally regarded by courts as working to the detriment of one of the parties and to the undue advantage of another. Experience has shown the wisdom and necessity of separating the function and obligation of counsel by forbidding the employment in different interests of the same person. * * * The danger of giving

entire freedom of selection of counsel to the trustees lies in the temptation of the attorney for some creditors when he becomes counsel for the trustees, to use his function as representative of all the creditors, unjustly to favor or oppose particular creditors or to induce the trustees to do so. * * * The chief argument that is pressed upon us to declare the contract valid and to sustain the judgment based upon it is the success with which the plaintiff is found to have worked out a useful settlement of the estate for the benefit of the creditors, and the absence of any finding or showing that there was actual fraud. But this is not a sufficient answer to the charge of illegality. * * * What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases. * * * Enforcement of such contracts, when actual evil does not follow, would destroy the safeguards of the law and lessen the prevention of abuses."

Speaking on this same Rule 8 and the disqualification of counsel, the Circuit Court of Appeals in Re Giannini, Inc., 90 F.(2d) 445, 448, 111 A.L.R. 1492, said:

"The rule is aimed at preventing not merely actual evil in a particular case but the tendency to evil in all cases. It must not be frittered away by creating exceptions for hard cases. It is as binding on an appellate court as on the court below."

We recognize that frequently counsel is selected by the client for personal reasons. Ability of client and counsel to work together may sometimes be considered. Sprague, the trustee, and Schuyler, the attorney, may be intimately associated in business and personal matters and may be in complete agreement as to methods and practice which should be followed in the instant case where, in the reorganization of the debtor, the Commonwealth Edison Company is necessarily a large, if not a dominant factor. We have not ignored this argument. Neither are we much impressed by it. The rule which is referred to in the above-cited cases is the result of experience. It must not be whittled down and made applicable only when small sums are involved. It does not permit of exception due to the fact that the creditor is also the owner of the common stock of the debtor. This fact, we think, furnishes added reasons for its enforcement, rather than the basis of an exception.

We are not overlooking the fact that the Commonwealth Edison Company is vitally and legitimately interested in any reorganization of the debtor. It has sold electric current and rendered other services to the debtor for which it has not been fully paid. It has large claims which it is anxious to satisfy. It is justified in its efforts to realize the largest possible dividends on its claims and its stock. It is likewise probably interested in securing the highest possible rate for the electrical current which it sells to the debtor. Its large interests, however, are not higher than the interests of others who have either unsecured or secured claims upon which no interest has been paid for years. Surely its claim, although large, is small compared to the other creditors whose claims aggregate some $80,000,000, most of which has already gone with the wind. The fact that the holders of these claims are scattered and the claimants numerous does not lessen, but perhaps emphasizes, the importance of selecting trustees and counsel whose independence (so far as Commonwealth Edison is concerned) inspires confidence instead of distrust and suspicion. The interest of Commonwealth Edison, as well as that of others, will be promoted by an acceptance of a fair plan, and the chances of that plan being promptly accepted are better, if those who sponsor it are backed by personal disinterestedness and a sincere loyalty to the cause of a just and fair reorganization.

Our conclusion is that Schuyler, Weinfeld & Hennessy were not qualified under Order 44 in bankruptcy of the Supreme Court and Rule 8 of the District Court to act as attorneys for Sprague, as trustee of the debtor, and the latter's petition for the former's employment must be denied.

The order is reversed, and the cause is remanded for further proceedings.