In re PHILADELPHIA ATHLETIC CLUB, INC., Debtor.

Civ. A. No. 82-0935.
Bankruptcy No. 80-02028.

United States District Court,
E. D. Pennsylvania.

May 27, 1982.

**330**

Pace Reich, Philadelphia, Pa., for debtor/plaintiff.

Samuel Brodsky, Philadelphia, Pa., trustee.

Melvin Lashner, Philadelphia, Pa., for trustee.

OPINION

McGLYNN, District Judge.

Presently before the court is the appeal of the debtor, Philadelphia Athletic Club, Inc. ("PAC") from an order of the Bankruptcy Judge approving the appointment of the law firm of Adelman and Lavine ("A&L") as counsel for the trustee of the estate of the debtor. Appellant argues that A&L has a conflict of interest and therefore the Bankruptcy Code, as well as the Code of Professional Responsibility ("Canons of Ethics"), prohibit the firm from becoming the attorney for the trustee. For the reasons set forth below, we agree with the appellant that it would be improper for A&L to serve as counsel for the trustee; accordingly, the order of the Bankruptcy Judge approving A&L as counsel for the trustee will be vacated and the cause remanded to the Bankruptcy Judge with di-

rections to disqualify A&L as counsel for the trustee.

I. FACTS

The debtor, PAC, is an incorporated health club where for the payment of annual membership dues, members have access to physical exercise facilities. The shares of the corporation are held by Samuel Rappaport Investments ("SRI"). SRI is a non-corporate entity, but its precise status is a matter of some dispute. Samuel Rappaport claims that he is the sole owner of SRI. In contrast, Leon Silverman and Elias Stein assert that they own a combined interest of fifty percent of SRI as partners of Rappaport.

In August 1980, Rappaport, on behalf of PAC, filed a petition pursuant to Chapter 11 of the Bankruptcy Code for reorganization of PAC and in October 1980, he filed a plan. At the time of the filing of this plan, Silverman and Stein were represented by the A&L law firm, in particular by Melvin Lashner, Esquire, a partner in the firm. On behalf of their clients, A&L filed objections to Rappaport's plan and disclosure statement. In their statement of objections and memorandum of law in support thereof (Exhibit D–1), A&L represented to the Bankruptcy Court, *inter alia*, that (1) their clients were shareholders of PAC; (2) that the filing of the Chapter 11 petition by Rappaport and his conduct of the business of the PAC was unauthorized; (3) that Rappaport's plan and disclosure statement was a "fraud" on the debtor and merely "a scheme to deprive Messrs. Stein and Silverman of their equity interest in the debtor"; (4) that Rappaport's plan was "solely one of self-dealing and made for his own self-interest"; and (5) that by proposing such a plan, Rappaport breached his fiduciary duty, unlawfully overreached his authority and deprived Stein and Silverman, as alleged equity security holders of the debtor, of their property in violation of the due process clause and Pennsylvania law. Furthermore, A&L accused Rappaport of failing to report in his disclosure statement that he made personal withdrawals in excess of a half a million dollars from the debtor.

In February 1981, the debtor filed an application for leave to pay management fees and again A&L filed objections, a memorandum of law and appeared in court to argue these objections (N.T. at 241–42). A&L further represented Stein and Silverman in objecting to Rappaport's application to enter into lease agreements and to sell the debtor's real estate (N.T. at 242, 243). At the same time, A&L wrote to counsel for the debtor, and stated that their clients would not object to the settlement of litigation in which the debtor was a party or to a loan of $100,000 to Rappaport, in his capacity as debtor-in-possession, for the payment of utility bills of the debtor. Moreover, on behalf of their clients, A&L filed their own plan of reorganization (N.T. at 243). In short, A&L has represented Stein and Silverman throughout this proceeding in what appears to be a struggle with Rappaport for control of the future of PAC.

At least one consequence of this struggle has been the removal of Rappaport as debtor-in-possession and the appointment of a trustee. This action was taken by the bankruptcy court on the petition of A&L pursuant to section 1104 of the Code, which empowers the court to substitute a trustee for the debtor-in-possession "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management. . . ." 11 U.S.C. § 1104(a)(1). The court appointed Samuel Brodsky, Esquire as trustee.

On October 18, 1981, the newly-appointed trustee petitioned the Bankruptcy Court for an order authorizing him to employ the firm of A&L as his counsel. On this same day A&L wrote to Stein and Silverman and stated that "now that the Trustee has been appointed by the Court we will withdraw from representing you in this matter and will represent the Trustee if the court approves." (N.T. at 232). The debtor opposed the appointment of A&L on the ground that because the firm represented Silverman and Stein, they have an interest materially adverse to the interests of the estate and Rappaport. On October 27, 1981, after a hearing during which evidence was presented, the Bankruptcy Judge, ruling from the Bench, approved the appointment of A&L as counsel for the trustee. The Judge noted that Section 327 of the Bankruptcy Code states that an attorney for the trustee may not hold or represent an interest adverse to the estate and must be a "disinterested person." However, the Judge held that A&L was a "disinterested person" as defined by the Code and did not have an interest materially adverse to the interests of the estate or Rappaport. This appeal followed.

## II. QUESTIONS PRESENTED

Two issues are raised for determination: (1) whether the order of the Bankruptcy Judge is appealable because it is interlocutory and (2) whether, according to the terms of the Bankruptcy Code, or the Code of Professional Responsibility, A&L should be disqualified from serving as attorney for the trustee.

## III. STANDARD OF REVIEW

■ The controlling standard of review is that set forth in Rule 810 of the Rules of Bankruptcy Procedure: "the court shall accept . . . [the Bankruptcy Judge's] findings of fact unless clearly erroneous . . . ." *Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 103 n.6 (3d Cir. 1981). The "clearly erroneous" standard, however, does not apply to questions of law. *Id.* at 103; *In re Meade Land and Development Co.*, 527 F.2d 280, 282–83 (3d Cir. 1975). When the question presented is solely one of law, the district court must make an independent determination of the correctness of the Bankruptcy Judge's legal conclusions. *Universal Minerals, Inc. v. C. A. Hughes & Co., supra; Grossman v. Internal Revenue Service*, 74 T.C. 1147 (CCH) ¶ 9387 at 87,080 (E.D.Pa.1981); *In re Gilchrist Co.*, 410 F.Supp. 1070, 1074 (E.D.Pa.1976).

■ The ruling of the Bankruptcy Judge, which is the subject of appeal here, was predicated on his interpretation of sections 101 and 327 of the Bankruptcy Code and therefore this legal conclusion is not entitled to a presumption of correctness. More-

over, our Court of Appeals has held that the question of whether counsel should be disqualified from representing a party because of an alleged conflict of interest in violation of the Code of Professional Responsibility is purely a legal one which is subject to plenary review. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1088 (3d Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). Accordingly, we must make an independent determination of the correctness of the Bankruptcy Judge's ruling that neither the Bankruptcy Code nor ethical considerations bar A&L from representing the trustee.

## IV. DISCUSSION

### A. The Appealability of the Bankruptcy Judge's Order.

■ Preliminarily, Adelman and Lavine argue that the Bankruptcy Judge's order refusing to disqualify counsel is interlocutory and not appealable to the District Court. We disagree. "Districts courts have appellate jurisdiction over 'final judgments, orders and decrees of bankruptcy courts,' and they also have discretion to hear appeals from interlocutory orders of bankruptcy courts. 28 U.S.C. § 1334." *Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 100–01 (3d Cir. 1981).

There is a paucity of authority on the standards which should guide the district court in exercising its discretion to review an interlocutory order of the bankruptcy court. One court that has addressed the question, however, has suggested that district courts continue their prior practice of refusing to entertain "appeals from trivial interlocutory orders of the bankruptcy court," *Roslyn Savings Bank v. Vaniman International, Inc.*, 8 B.R. 751, 752 (E.D.N.Y.1981), in order to prevent the clogging of district courts with bankruptcy appeals and to discourage unnecessary delays and disruptions in bankruptcy proceedings. *See*

*also In re Casco Bay Lines, Inc.*, 8 B.R. 784 (Bkrtcy.App.Panel 1st Cir. 1981). We agree but the issue on appeal here can hardly be characterized as "trivial." On the contrary, we are asked to consider a very serious question relating to the fundamental fairness of the bankruptcy proceedings. Decisions by the court appointed trustee will have a critical impact on the outcome of this Chapter 11 proceeding. *See In re Imperial "400" National, Inc.*, 481 F.2d 41, 54–55 (3d Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973) (Lumbard, J., dissenting); 3 Norton Bankruptcy Law and Practice § 53.06–53.08 (1981).[1] If the trustee is being advised by counsel with respect to matters upon which counsel previously has taken a position on behalf of clients whose interests are adverse to those of other parties, then the public's confidence in the integrity of bankruptcy proceedings can only be further eroded.

Rulings by the Court of Appeals for the Third Circuit suggest that we should exercise our discretion and entertain this appeal. This Circuit has bypassed the final order requirement of 28 U.S.C. § 1291, and has accepted for review appeals from interlocutory rulings of the district courts denying or granting motions to disqualify an attorney because of an alleged conflict of interest, holding, *inter alia*, that the question presented by such an appeal is " 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred.' " *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1088 (3d Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976) (quoting *Greene v. Singer Co.*, 509 F.2d 750, 751 (3d Cir. 1971)). *See also In re Fine Paper Antitrust Litigation*, 617 F.2d 22, 26 (3d Cir. 1980).

As an identical issue is being raised here, we will exercise our discretion by entertaining this appeal.

---

1. *Cf.* D. Cowans, Bankruptcy Law and Practice § 605 at 262 (2d ed. 1978) ("A fact of bankruptcy life is that the creditor interests and therefore the Trustee's side of the case tends to be controlled by the Trustee's attorney rather than the Trustee. This is not invariable but it does happen frequently.")

## B. Disqualification under the Bankruptcy Code or the Code of Professional Responsibility.

Section 327(a) of the Bankruptcy Code[2] provides:

[T]he trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 101(13),[3] in pertinent part, defines "disinterested person" as one who

(E) does not have an interest materially adverse to the interest of the estate or of any class of ... equity security holders ... for any ... reason.[4]

The definition of "disinterested person" found in the Bankruptcy Reform Act of 1978 "is basically adapted, with some expansion and modification, from Section 158 of Chapter X (corporate reorganization) of the Bankruptcy Act of 1898 and Bankruptcy Rules which were in effect prior to the adoption of the Code." 1 Collier Bankruptcy Manual § 101.13 (1981). In cases decided under that law, the courts held that the tests of disinterestedness were to be rigidly applied and could not be waived because of the integrity or ability of the particular person involved. *See e.g. Meredith v. Thralls*, 144 F.2d 473, 475 (2d Cir.), *cert. denied*, 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 (1944); 1 Collier Bankruptcy Manual § 101.13 (1981).

Under the Act of 1898, a trustee in a corporate reorganization proceeding had to be "independent and disinterested so far as possible." *In re Ocean City Automobile Bridge Co.*, 184 F.2d 726, 729 (3d Cir. 1950). He had to "be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters". *In re Realty Associates Securities Corp.*, 56 F.Supp. 1007, 1007 (E.D.N.Y.1944). The at-

torney for the trustee had to exercise the same degree of disinterestedness as the trustee himself. 6 Collier on Bankruptcy ¶ 7.06 at 1203 (14th ed. 1978). "This, of course, ... [was] quite sensible, for it would be anomalous indeed to require a trustee to be aloof from all connection with the debtor or its management, yet permit the trustee's attorney, who would necessarily be active in furthering the trustee's duties of investigation, management, prosecution, development of plans and the like, to have a close relationship with the debtor, its management or associates." *Id.* Accordingly, it had been held that a debtor's attorney was not eligible for appointment as a "disinterested" attorney for the trustee, *In re Progress Lektro Shave Corp.*, 117 F.2d 602 (2d Cir. 1941), nor was an attorney who had represented a stockholder of the debtor eligible to serve as the trustee's counsel. *In re Chicago Rapid Transit Co.*, 93 F.2d 832 (7th Cir. 1937). *See generally*, Annot., 79 A.L.R.2d 759 (1961).

In its discussion of the term "disinterested person" as defined in the Bankruptcy Reform Act of 1978, Collier's states the following:

The enunciated elements provide a minimum standard for the guidance of the court in its appointments, and insure that the persons employed shall have the essential character of independence and disinterestedness which is required. These elements do not, however, establish an exclusive standard. As was the case under pre-Code bankruptcy practice, (continued by virtue of the "catchall" provision of clause (E)), if a court deems a particular person's associations to be prejudicial to disinterestedness, it may reject him even though those associations do not come strictly within the purview of section 101(13). Thus, the phrase "or for any other reason" permits the court to find a particular person lacking in disinterestedness for reasons other than the non-exclusive statutory guidelines.

2. 11 U.S.C. § 327(a).

3. 11 U.S.C. § 101(13).

4. The facts here show that Rappaport is an "equity security holder" of the debtor. 11 U.S.C. § 101(15), (16). Stein and Silverman claim the identical status. See Exhibit D–1 at page 2–3.

As noted above, clause (E) may be termed a "catch-all clause", and it seems broad enough to include anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the Code and Bankruptcy Rules. The reasons supporting this extensive inclusion are the same, of course, as those previously recounted. Indirect or remote, as well as direct, associations or affiliations may engender conflicting loyalties.

. . . .

It is clear, therefore, that the definition of disinterested person in paragraph (13) promotes the policy that as a general principle professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.

1 Collier Bankruptcy Manual § 101.13 (1981) (footnotes omitted).

■ Using this analysis we think A&L does have an interest materially adverse to both Rappaport and the estate which will impair their ability to give independent and impartial advice to the trustee. We consider the conflict with Rappaport first.

### 1. *Rappaport*

In their role as counsel for Stein and Silverman, A&L clearly took a position which was and remains materially adverse to the interest of Rappaport. They attacked Rappaport's plan for reorganization and proffered one of their own. They challenged the handling of the debtor's affairs and accused Rappaport of committing a "fraud" and with siphoning large sums of cash from the debtor for his personal use. A&L then caused the Bankruptcy Court to remove Rappaport as debtor-in-possession and to have him replaced with a trustee.

Only several months after making these accusations, A&L was appointed by the court to assist the trustee in, among other things, judging or choosing between the conflicting positions or interests of Stein and Silverman and Rappaport.

As the attorney for a Chapter 11 trustee, A&L will have to assist the trustee in performing the following duties: (1) filing a list of creditors and a schedule of assets and liabilities and a statement of the debtor's financial affairs; (2) investigating the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business, the desirability of the continuance of the business and any other matters relevant to the case or the formulation of a plan; (3) reporting the results of this investigation to the court and other interested persons and, since one of the grounds under Chapter 11 for appointing a trustee include fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor, the trustee's report should cover these points if they occurred, as well as any misconduct or irregularity in the management of the affairs of the debtor; (4) finally, and most important, the trustee must file a plan of reorganization and in doing so will have to choose between proposals made by the various parties. 3 Norton Bankruptcy Law and Practice ¶ 53.-06–53.08 (1981). As the attorneys for Stein and Silverman, A&L already has taken a position materially adverse to Rappaport with respect to most of these areas of responsibility.

Lashner maintains, however, that his judgment or advice will not be affected by his prior representation. We do not doubt Mr. Lashner's sincerity, but we question whether his objectivity has not been impaired. Even the "most rigorous self-discipline" will not prevent Lashner's judgment from being influenced by his experience as an advocate for a competing interest.[5] Lashner conceded as much:

---

**5.** Cf. *Emle Indus. Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973) ("A lawyer's good faith, although essential in all professional ac-

tivity, is, nevertheless, an inadequate safeguard when standing alone. Even the most rigorous self-discipline might not prevent a lawyer from

Q. Would in any way your judgment or advice be colored or affected by the prior representation of Messrs. Stein and Silverman.

A. Not the representation per se, but *from what I've gleaned from the proceedings I think I would advise the Trustee of my year of experience in this proceeding.* N.T. at 249 (emphasis added).

 In any event, "the avoidance of a real appearance of impropriety is of chief concern to a court of bankruptcy in an instance like that at bar .... [I]t is not sufficient that the trustee and his counsel actually be disinterested; the appearance of ... [interestedness] must also be avoided...." *In re Perry, Adams & Lewis Securities, Inc.,* 5 B.R. 63, 64 (Bkrtcy.W.D.Mo. 1980). Canon 9 of the Code of Professional Responsibility, which is applicable to attorneys practicing before the Bankruptcy Court for the Eastern District of Pennsylvania,[6] states: "A lawyer should avoid even the appearance of professional impropriety." The Third Circuit, citing Canon 9, stated that "courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also failing to avoid the appearance of impropriety." *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–86 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973) (footnote omitted). The Court of Appeals has held that in applying Canon 9, a court "must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *United States v. Miller,* 624 F.2d 1198, 1202 (3d Cir. 1980). A court should also consider any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions. *Id.* at 1203. *See generally,* Kramer, *The Appearance of Impropriety under Canon 9: A Study of the Federal Judicial Process Applied to Lawyers,* 65 Minn.L.Rev. 243 (1980).

We believe that if A&L is permitted to serve as counsel to the trustee, an "informed and concerned private citizen" would inevitably come to the conclusion that Stein and Silverman would be given preferential treatment by A&L, as the trustee's counsel, which would be to the detriment of the other parties to the proceeding. This would therefore present the appearance of impropriety to the public and may undermine the public's confidence in the fairness of bankruptcy proceedings. We have considered the trustee's "right" to engage counsel of his own choice,[7] *see In re O.P.M. Leasing Services, Inc.,* 16 B.R. 932, 941 (Bkrtcy.S.D.N.Y.1982) and the policy of permitting lawyers to practice without unnecessary restrictions, but both these considerations are subject to Congress's mandate that the bankruptcy court approve the appointment of counsel for the trustee only after finding that the attorney is "disinterested". It is clear that A&L is not disinterested—either in actuality or in appearance—and they should therefore be disqualified from serving as counsel in the instant case.

Our decision is reinforced by a Resolution of the Judicial Council of the Third Circuit ("Council"), dated February 10, 1972, which provides as follows:

RESOLVED that in all bankruptcy proceedings this Council holds as incom-

---

unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation.").

**6.** Since the Bankruptcy Court does not become independent of the district court until March 31, 1984, see § 404(a) of Tit. IV of the Bankruptcy Reform Act of 1978, 11 U.S.C.A.App. at 134, the ABA Code of Professional Responsibility, as adopted by the Supreme Court of Penn-

sylvania, governs the conduct of attorneys practicing before our Bankruptcy Court. See Local Rule 14 of the U.S.Dist.Court (E.D.Pa.).

**7.** *Cf. Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1093 (3d Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976) ("[A]lthough, the right to counsel is absolute, there is no absolute right to a particular counsel.").

patible the continued representation as attorney for the trustee by any lawyer or his firm who represents a third party who submits a plan for reorganization in the bankruptcy; and that recusal by the attorney only from commenting on proposed reorganization plans is not an adequate immunization from the appearance of a conflict of interest.

(quoted in *In re Imperial "400" National, Inc.*, 481 F.2d 41, 42 (3d Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973)).[8] Judge Lumbard of the Second Circuit, sitting by designation in the *Imperial* case, articulated the Council's justification for this Resolution as follows:

The public and the bar demand of the federal judiciary and its officers adherence to the highest standards of conduct. . . . Not only must matters be handled fairly and impartially by judges and officers of the courts, there must not even be the appearance of possible unfairness and partiality. . . . The result is that a federal judge almost always disqualifies himself if he, or any member of his immediate family, has any interest whatever, no matter how small, in any of the parties involved in litigation before the court.

There is no reason why similarly high standards should not be required of the officers of the federal courts, including counsel to a trustee in a bankruptcy reorganization. Canon 9 of the American Bar Association Code of Professional Responsibility states: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Accompanying Canon 9 is Ethical Consideration 9–6 which states: "Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and judges thereof; . . . to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and

trust of his clients and of the public; and *to strive to avoid not only professional impropriety but also the appearance of impropriety.*" [Emphasis added]

Canon 5 of the Code states: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." Ethical Consideration 5–15 amplifies this general language: "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues employment. *He should resolve all doubts against the propriety of the representation.*" [Emphasis Added]

The spirit of the Bankruptcy Act is entirely consistent with these policies. For example, section 157 provides generally that before an attorney can be appointed to represent a trustee he must qualify as a disinterested person. 11 U.S.C. § 556. Section 158 defines interested persons to include those who "for any reason [possess] an interest materially adverse to the interests of any class of creditors or stockholders." 11 U.S.C. § 558. One commentator has noted that "this [clause] has rightly been termed a 'catch-all clause,' and it seems broad enough to include anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the Act." 6 Colliers on Bankruptcy ¶ 708(5), at 1186 (14th ed. 1972) (footnotes omitted). . . . Furthermore, section 158 "provides a *minimum* standard for the guidance of the judge in his appointments and insures that persons employed as trustees and their attorneys in the conduct of Chapter X proceedings shall have that character of independence and disinterestedness which was considered one of the chief aims of Chapter

---

**8.** See 28 U.S.C. § 332. "[A] . . . resolution of the circuit council . . . [is] binding on all the district courts of the circuit and on all the officers of those district courts, which include[s] counsel for trustees in reorganization proceedings. . . . The order of the council . . . is the law of the circuit." *In re Imperial "400" National, Inc., supra* at 50 (Lumbard, J., dissenting).

X"; and even if a person's associations do not come within the literal purview of section 158, a judge can reject him if his associations are "prejudicial to disinterestedness." 6 Colliers on Bankruptcy ¶ 7.08[1], at 1180–81 (14th ed. 1972) (emphasis added) (footnotes omitted). Thus, it is apparent that the same concerns which are embodied in the Code of Professional Responsibility are also present in the statutory scheme governing corporate reorganizations under the Bankruptcy laws.

Id. at 54–55 (dissenting opinion)[9] (citations and footnotes omitted).[10]

In the instant case, A&L had represented a party who submitted a plan for reorganization and thus, pursuant to the Resolution of the Judicial Council, should be disqualified from serving as counsel to the trustee. We realize, however, that the facts before us are somewhat different than those in *Imperial*. There the trustee's counsel's law firm represented a party who submitted a plan for reorganization while their colleague remained counsel to the trustee; whereas, in the instant case, A&L withdrew as counsel for Stein and Silverman at the time of their appointment as attorneys for the trustee. We nonetheless believe that the same concerns expressed by Judge Lumbard in the *Imperial* case and by the Resolution of the Judicial Council are applicable here. The appearance of impropriety, which was of paramount importance to the Judicial Council, is not erased merely because A&L withdrew from its representation of Stein and Silverman when appointed as counsel to the trustee. To argue to the contrary, as appellee apparently does, "is to argue against reality, against the vagaries of human nature, and against widely-held public impressions of the legal profession." *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1092 (3d Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). Accordingly, we

hold that the rationale underlying the February 10, 1972 Resolution of the Judicial Council is equally applicable here and dictates the removal of A&L as counsel to the trustee.

## 2. The Estate of the Debtor

■ We hold further that because of their prior representation of Stein and Silverman, A&L has an interest materially adverse to the estate of the debtor. As mentioned earlier, an attorney for the trustee in a corporate reorganization proceeding would assist the trustee in the execution of his fiduciary responsibilities to the estate of the debtor. He therefore would have a duty of loyalty to the estate, and must exercise independent professional judgment on its behalf, free from compromising influences and loyalties. *See* 6 Collier on Bankruptcy ¶ 7.06 at 1203–04 (14th ed. 1978). The interests of any other person, therefore, should not affect his basic judgment and responsibility to the estate. *See In re 765 Associates*, 14 B.R. 449, 450 (Bkrtcy.D. Hawaii 1981). Thus, an attorney for the trustee should not place himself in a position where he may be required to choose between conflicting interests or duties. *Id.* at 451.

The record shows that PAC is merely a straw corporation, a "shell" for the true owner of the business, SRI (See Exhibit D–3, page 2). Stein and Silverman claim SRI is a general partnership and for present purposes we will assume this to be true. The interests of a partnership often conflict with the interests of its general partners. *In re 765 Associates, supra* at 451. Thus, it has been held, in the context of a bankruptcy proceeding, that "an attorney representing a general partnership should not render advice to the general partners nor receive compensation from . . . a general partner." *Id.*

**9.** The majority in *Imperial* stated that they agreed with the "general discussion of conflict of interests" in Judge Lumbard's dissenting opinion. 481 F.2d at 48.

**10.** Although the resolution of the Judicial Council was issued in the context of a Chapter

X proceeding under the Bankruptcy Act of 1898, the ethical precepts expressed therein are, of course, equally applicable to a corporate reorganization under the new Bankruptcy Code.

Although A&L claims they no longer represent general partners Stein and Silverman, we believe that the independence and impartiality of A&L's judgment or advice to the trustee regarding the interests of the debtor will be impaired by their prior representation of Stein and Silverman. When performing their duties to the estate, A&L may be tempted, perhaps unconsciously, to cater to the interests of their former clients, rather than to make decisions or give advice solely with the best interests of the estate in mind. *See Developments in the Law— Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1295–96 (1981). Thus, A&L has an interest which is at least potentially adverse to the estate of the debtor.

■ "In reviewing questions of the propriety of the trustee hiring attorneys, the Courts have emphasized that there must be the avoidance of conflict, actual or apparent. The foremost consideration has to be the attorney's ability to serve the best interests of the bankrupt." *In re Heatron, Inc.,* 5 B.R. 703, 705 (Bkrtcy.W.D.Mo.1980). Because of A&L's prior representation of a general partner of the debtor, its duty of loyalty to the estate of the debtor and thus its ability to serve the best interests of the estate may be affected. The interests of the debtor will be best promoted by the acceptance of all parties of a fair plan of reorganization, and the prospect of that plan being promptly accepted are better if the counsel for the trustee, who will be substantially responsible for sponsoring it, is free from all appearances of personal interestedness and has exclusive loyalty to the cause of a just and fair reorganization.

*See In re Chicago Rapid Transit Co.,* 93 F.2d 832, 839 (7th Cir. 1937). Accordingly, A&L should not be permitted to serve as counsel to the trustee.[11]

## V. CONCLUSION

For the above reasons, the order of the Bankruptcy Judge approving A&L as counsel for the trustee is vacated and the cause is remanded with directions to remove Adelman & Levine as counsel for the trustee.

11. We note that Melvin Lashner, Esquire appears, from the scant record before us, to be the only member of the A&L firm to be involved directly with A&L's representation of Stein and Silverman. The Bankruptcy Court's docket does not list any entry of appearance for Stein and Silverman, although the entire firm of A&L is listed as counsel of record for these two men on the pleadings submitted to the court. In any event, all members of the A&L firm must be disqualified from serving as counsel to the trustee. Since Lashner is required to withdraw from employment as counsel to the trustee, "no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." Annotated Code of Professional Responsibility, DR 5–105(D), at pp. 246–51 (1979); *Id.,* Canon 9 at pp. 407–09; February 10, 1972 Resolution of the Judicial Council for the Third Circuit (discussed in *In Re Imperial "400" National, Inc.,* 481 F.2d 41 (3d Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973)); *Realco Services, Inc. v. Holt,* 479 F.Supp. 867, 871 (E.D.Pa.1979); *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 184, 389 A.2d 568, 572 (1978).