**In re JARTRAN, INC., Debtor.**

**Bankruptcy No. 86 B 3691.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 4, 1987.

*Memorandum and Order*

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter is before the Court on the motion of Nachman, Munitz & Sweig, ("Nachman"), counsel for the debtor in possession ("debtor"), for leave to withdraw and substitute Winston and Strawn ("Winston"). A complete recapitulation of the facts of this case is set forth in *In re Jartran,* 71 B.R. 938 (Bankr.N.D.Ill.1987) and need not be repeated here, except as may be necessary for an understanding of this decision.

On December 31, 1981, Frank B. Hall & Co. ("Hall") acquired 92% of the common stock of Jartran, Inc. On that same day Jartran, Inc. filed for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.* ("Jartran I")). Hall was instrumental in funding and securing the confirmation of the Jartran I plan of reorganization and in the process became the sole shareholder of Jartran. Finding it impossible to continue operating its business, the reorganized Jartran commenced a new case under the Bankruptcy Code ("Jartran II") on March 4, 1986. Jartran II and Hall have proposed a joint liquidating plan.

In addition to being Jartran II's sole shareholder, Hall has also become Jartran II's largest secured creditor and perhaps its largest unsecured creditor with claims against the Jartran II estate aggregating in excess of $40 million. At the time of the commencement of this case, Jartran II's

total liabilities were estimated in excess of $114,000,000 and assets were valued at $37,000,000. (Exhibit A, Jartran II Petition for Reorganization.)

Subsequent to the commencement of Jartran II, Nachman and Winston reached an agreement to consolidate their law practices and to continue under the Winston firm. On May 12, 1987, Nachman submitted this motion to substitute Winston. The motion contemplates Winston continuing to represent both Hall and Jartran II.

Freuhauf, a substantial unsecured creditor, objects to Nachman's motion. Relying on § 327(c)[1], Freuhauf requests this Court deny the motion on the basis that Nachman's prior representation of Jartran II constitutes an actual conflict of interest with Winston's continuing representation of Hall. Freuhauf also claims that Winston's representation would run afoul of Canons 1, 4, 5, 6 and 9 of the Code of Professional Responsibility. Although at first blush it may appear that Winston's continued representation of Hall and Jartran II poses ethical conflicts, to rule blindly in Freuhauf's favor without considering the factual and economic realities of this case would result in a disqualification based on speculation, a precept previously frowned upon. *See In re O'Connor,* 52 B.R. 892, 898 (Bankr.W.D.Okla.1985).

One of the initial entries on the Jartran I docket made over five years ago was the appointment of Winston and Nachman as co-counsel to the debtor. Throughout Jartran I, the two firms worked together, without objection by Freuhauf, in devising what became the confirmed plan of reorganization, objecting to various creditors, and fending off attempts by U–Haul, the proponent of an alternative plan. Winston also defended Jartran in adversary proceedings within the Jartran I case and in the Lanham Act proceedings in Arizona brought prior to the commencement of Jartran I. Similarly, Nachman's application to appoint itself attorneys in Jartran II reveals that Nachman has previously represented Hall in transactions between Hall and third parties. In consideration of the above, characterizing Winston and Nachman as separate entities with no connection to each other's clients, would be ignoring reality.

Economically, the Jartran II estate can ill afford the time, if not the expense, associated with removal of the former Nachman attorneys at this stage of the case. Were this court to determine that removal is appropriate, removing Jartran II from Winston would only solve part of the problem. The former Nachman attorneys would still be required to maintain confidences and not in any way improperly compromise Jartran II's position, as would the Winston attorneys who worked on Hall–Jartran matters.[2]

Nevertheless, Nachman's Motion, and Freuhauf's objection have caused this Court to examine the propriety of Winston simultaneously representing Jartran II and Hall. In light of the seriousness of the issues involved, the Court is annoyed by the lack of effort on Winston's behalf to analyze the problems created by this merger.

■ The attorney for a debtor in possession must meet the requirements of § 327. *In re Cropper Co.,* 35 B.R. 625, 628 (Bankr.M.D.Ga.1983); *In re Seatrain Lines,* 13 B.R. 980 (Bankr.S.D.N.Y.1981). Both parts of a two prong test required by § 327 must be satisfied. The attorney must be both disinterested and possess no

1. Section 327 of the Code provides in part that:
    (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title....
    (c) In a case under chapter 7, 11 or 12 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

2. The court does not now determine whether there are confidences which may be subject to disclosure because of the relationship between Jartran and Hall, or otherwise, nor whether Winston should be removed from the representation of Hall.

interest adverse to the bankruptcy estate. *In re AOV Industries, Inc.*, 797 F.2d 1004, 1011 (D.C.Cir.1986). This is to ensure that persons employed shall have the essential character of independence and disinterestedness which is required. *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 333 (E.D.Pa.1982). *Accord In re Cropper*, 35 B.R. at 629.

■ Although "adverse interest" is not defined in the Code,[3] § 101(13) provides an illustrative definition of disinterested:

> "disinterested person" means person that—. . . .
>
> (E) does not have an interest *materially* adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... (§ 101(13)). (Emphasis added.)

The standards for disinterestedness are to be rigidly applied to include persons who for any reason possess an interest adverse to the interests of any class of creditors, and may "include anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the [Code]". *Philadelphia Athletic Club, Inc.*, 20 B.R. at 336, quoting 6 Colliers ¶ 708(5) at 1186 (14th ed. 1972). *Accord In re Ocean City Automobile Bridge Co.*, 184 F.2d 726 (3rd Cir.1950); *In re Realty Associates Securities Corp.*, 56 F.Supp. 1007 (E.D.N.Y.1944); *In re WPMK, Inc.*, 42 B.R. 157 (Bankr.D.Hawaii 1984).

■ "Strict standards are necessary in light of the unique nature of the bankruptcy process", where the attorney for the debtor in possession has a fiduciary responsibility and a duty of loyalty to the debtor's estate. *In re Cropper*, 35 B.R. at 629; *In re Philadelphia Athletic Club*, 20 B.R. at 337. *See also Stein v. United Artists Corporation*, 691 F.2d 885, 892 (9th Cir.1982). The debtor's attorney must exercise independent professional judgment which is free from compromising influences and loyalties. "[A]n attorney for the [debtor in possession] should not place himself in a position where he may be required to chose between conflicting interest or duties". *In re Philadelphia Athletic Club, Inc.*, 20 B.R. at 337; *In re 765 Associates*, 14 B.R. 449, 451 (Bankr.D.Hawaii 1981). However, while the test of disinterestedness is to be applied rigidly, it cannot be applied blindly. The appropriate query is whether counsel possesses an interest "such as would color the requisite independent judgment and impartial attitude." *O'Connor*, 52 B.R. at 899.

Nachman has urged this Court to grant its motion for substitution while at the same time acknowledging the potential for conflict between Jartran II and Hall. Specifically, Nachman admits that "certain relationships existing between Hall and Jartran [II] and its estate may give rise to controversies between them, such as:

> (a) secured and administrative claims asserted by Hall against Jartran and the property of Jartran [II];
>
> (b) claims asserted by Jartran [II] against Hall under § 506(c) of the Bankruptcy Code;
>
> (c) any claims that may be asserted by Jartran [II] or its estate against [Winston], including, but not limited to, the recovery of fees paid to [Nachman] prior to the commencement of this case."

Nachman maintains that Winston's continued representation of Jartran II and Hall is permissible because these matters constitute only potential conflicts and § 327(c) requires the existence of an actual conflict. Nachman has further represented that in the event of actual conflict Winston would seek the appointment of special

---

**3.** *But see In re Roberts*, 46 B.R. 815 (Bankr.D. Utah 1985) where the court held that to " 'hold an adverse interest' means for two or more entities (1) to possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) to possess a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Id.* at 826–27.

counsel to pursue those claims.[4] In the meantime, Winston has constructed a "Chinese Wall" to protect client confidences.[5]

The Court appreciates the fact that the debtor has but limited funds available to it and the Court prefers that any money available go to creditors of the estate rather than to new attorneys who may be required to familiarize themselves with the debtor, should Winston be disqualified. However, financial considerations alone do not temper the ethical issues raised by the present motion.

The court cannot ignore the fact that certain creditors, including Hall, received funds from the debtor within 90 days of the filing of this case. (*See* Vol. 2 Petition for Reorganization, Rider to Question 13 of the Statement of Financial Affairs.) Preference actions under § 547 which may be, or have been commenced against those parties could provide additional funds for other creditors of the estate. In the meantime, Hall and Jartran II have proposed a joint liquidating plan of reorganization. It appears to the Court that resolving these preference actions is intricately connected to whether a potential conflict of interest will become an actual conflict of interest. The Unsecured Creditors' Committee of Jartran I, seems to agree and suggests that if a consensual plan of reorganization is achieved, "it is unlikely that actual conflicts of interest will materialize."

Since none of the potential conflicts that Nachman and Freuhauf acknowledge could exist, do exist, at present, the Court is reluctant to require that Winston be disqualified before Hall, Jartran II, and the creditors have had an opportunity to devise a mutually acceptable plan of reorganization. Nevertheless, the Court cannot sit by and wait for the parties to form a consensual plan or advise the Court that one cannot be achieved or that the "Chinese Wall" has eroded or that an actual conflict now exists. Rather, the Court perceives its duty to take such steps as will effectively manage the case before it "in such a way as to promote their orderly and prompt disposition", *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 373, *cert. granted,* — U.S. —, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987), and "to promote fairness to all parties". *In re UNR Industries,* 72 B.R. 789 (Bankr.N.D.Ill.1987).

The Court will therefore order the United States Trustee to designate an examiner which the Court will appoint with full authority to inquire into the relationship between Hall and Jartran II prior to and subsequent to the commencement of this case and report to the Court as to the likelihood of the existence of a cause or causes of action by Jartran II against Hall. If the preliminary inquiry yields sufficient facts in the Court's opinion to require a full investigation, the powers of the examiner will be increased to include the right to waive the attorney/client privilege. If the disclosed facts justify Winston's disqualification from this case, then such determination will be made at that time. The examiner shall also inform the Court of the status of negotiations to develop a consensual plan of reorganization. The Court will reserve for determination the matter of how the examiner will be compensated and his costs paid.

In the meantime, Winston is required to maintain the procedures it has previously established to ensure that the rights and confidences of Jartran II and Hall, as well as the rights of all other parties in interest, will not be prejudiced by the consolidation of Winston and Nachman.

The appointment of an examiner is made on the Court's own motion and on the basis that such examiner's report will provide such information as the Court will require in determining whether to remove Winston from this case or whether the creditor's interests will be best served by allowing Winston to remain as counsel to Jartran II and Hall.

**4.** Nachman also asserts that Jartran II's choice of Winston is merely an exercise of its right to select its own counsel. Although, the right to counsel is absolute, there is no absolute right to a particular counsel.

**5.** Which group at Winston is to advise the court, the U.S. Trustee and the creditors of the existence of a conflict?

It is anticipated that the United States Trustee will appoint an examiner who is considered by the bar as well versed in both the Code of Professional Responsibility and bankruptcy law so that he or she may, upon disclosure, recognize and differentiate between an actual and a potential conflict of interest and know what to look for in an economical manner.

*The Examiner*

1. The United States Trustee will be ordered to present to this Court an order for the appointment of an examiner meeting the foregoing requirements on August 18, 1987 at 10:30 a.m.

2. The examiner so appointed shall examine the relationship between Hall and Jartran II and determine whether facts exist on which either Hall or Jartran II may assert a cause of action under applicable law against the other or any other. In making this determination, the examiner shall have full powers of discovery provided for in the Bankruptcy Code and Rules, to inquire of any interested party as to their position or claims.

3. Notice of intent to appoint an examiner shall be given to all parties or record through a copy of this Memorandum and Order. A hearing on any objections to such appointment of the examiner shall be held on August 18, 1987 at 10:30 a.m.

4. The examiner is to hold an initial meeting with the legal representatives of Hall and Jartran II, and if desired, with the legal representatives of the creditors committee of Jartran I and any other interested party as soon as practical after the entry of the order approving the appointment of the named examiner.

5. Within three weeks following the initial meeting, the examiner is to file a written report informing the Court as to his or her preliminary findings required by this Memorandum and Order with a copy of such report to all parties of record.

6. This order requiring the appointment of an examiner is predicated upon Section 105(a), Section 1104, and Section 1106 of the Bankruptcy Code. The Court further concludes that there is sufficient cause warranting the appointment of an examiner, and that the benefit to the debtor's estate outweighs the cost and expenses created by the examiner's appointment.

NOW THEREFORE IT IS ORDERED that the United States Trustee shall appoint an examiner to perform the functions as described more fully in this Memorandum and Order.

IT IS FURTHER ORDERED that until further order of the Court the motion of Nachman, Munitz & Sweig for leave to withdraw and substitute Winston and Strawn as attorneys for the debtor is allowed.

IT IS FURTHER ORDERED that Winston and Strawn shall maintain the procedures it has taken to protect and ensure the rights and confidences of Jartran II and Hall, as well as the other parties in interest.

IT IS FURTHER ORDERED that Winston and Strawn are directed to serve a copy of this Memorandum and Order on all parties of record excepting the United States Trustee, Fruehauf and the Unsecured Creditors' Committee of Jartran I, on or before August 10, 1987 and to file proof of such service with the Clerk of the Bankruptcy Court.

## ADDENDUM TO MEMORANDUM AND ORDER OF AUGUST 4, 1987

On August 17, 1986, the Jartran I Creditors Committee ("Committee") presented an emergency motion requesting that the Court defer that part of the Court's Memorandum and Order of August 4, 1987 requiring the appointment of an examiner. The Committee's position is that achieving a consensual plan of reorganization would obviate the need for an examiner since resolving the problems related to the conflict question through negotiations would prevent actual conflicts from arising. Freuhauf, Frank B. Hall and Co. and Jartran II each assured the Court of their participation in such negotiations.

Further research, has disclosed the Utah District Court's en banc opinion in *In re Roberts*, 75 B.R. 402 (D.Utah 1987) (en

banc) supports the Court's position set forth in the Memorandum of August 4, 1987 as respects actual conflict as opposed to potential conflict.

The Court has received assurances from senior partners of Winston that Winston and Nachman attorneys would continue such steps as are necessary to maintain the confidentiality of communications as ordered by this Court's Memorandum and Order of August 4, 1987 and as set forth in their memorandum filed with the Court.

NOW THEREFORE IT IS ORDERED that that portion of this Court's Order of August 4, 1987 requiring the appointment of an examiner is hereby vacated subject to reinstatement, on notice, by any party in interest or by the Court.