In re MICHIGAN GENERAL CORPORATION, debtor.

In re MICHIGAN GENERAL INVESTMENT COMPANY, INC., debtor.

In re DIAMOND LUMBER, INC., debtor.

In re KRESTMARK, INC. formerly Krestmark of Alabama, Inc., debtor.

In re KRESTMARK INDUSTRIES, INC., debtor.

In re EASTERN BUILDING SUPPLY COMPANY, INC., debtor.

Bankruptcy Nos. 387–32191–A–11, 387–32270–A–11, 387–32190–A–11, 387–32536–A–11, 387–32535–A–11 and 387–32537–A–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 23, 1987.

As Revised Sept. 16, 1987.

Rehearing Denied Sept. 16, 1987.*

---

* See Bkrtcy., 78 B.R. 479.

Vernon O. Teofan, Freytag, Perry, La-Force, Rubinstein & Teofan, Dallas, Tex., for Unsecured Creditors' Committee for Diamond Lumber.

George McElreath, Asst. U.S. Trustee, N.D. Tex., Dallas, Tex.

Dean M. Gandy, Akin, Gump, Strauss, Hauer, & Feld, Dallas, Tex., for debtors.

John Flowers, Locke, Purnell, Boren, Laney & Neeley, Dallas, Tex., for Republicbank Dallas, Indenture Trustee.

Michael A. McConnel, Kelly, Appleman, Hart & Hallman, Ft. Worth, Tex., for Creditors' Committee for Krestmark Industries, Inc.

Robert Jones, Thompson & Knight, Dallas, Tex., for Arthur Andersen & Co.

## REVISED MEMORANDUM OPINION[*]

HAROLD C. ABRAMSON, Bankruptcy Judge.

This decision concerns the qualifications and responsibilities of professionals who are employed by debtors in possession in reorganization proceedings. The several

---

[*] This memorandum is a revision of the court's Memorandum Opinion entered on June 23, 1987. After the court issued its order disqualifying Akin, Gump and denying compensation, the firm motioned the court for a rehearing. Akin, Gump alleges that the court has made errors of both fact and law. This revised opinion is issued to correct two insignificant mistakes made by the court that Akin, Gump has pointed out. The first has to do with the consideration received by GFI Nevada, Inc. for the transfer of its controlling interest in Michigan General. The court had identified the consideration as preferred stock and a non-recourse note, but only a note of a newly created entity was given in exchange for the controlling interest. The court had also stated that Akin, Gump had filed a motion to substantively consolidate all of the cases. This revised opinion reflects that the motion was for consolidation of only the Michigan General and the Michigan General Invest-

debtors listed in the caption above have sought to retain the accounting firm of Arthur Anderson & Co. as accountants for the estates and the law firm of Akin, Gump, Strauss, Hauer & Feld as attorneys for the estates. This is a core proceeding which involves matters concerning the administration of the estates. 28 U.S.C. secs. 157, 1334; 11 U.S.C. secs. 327, 328, 329, 330; Bankruptcy Rules 2014, 2016, 2017. This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The employment of Akin, Gump, Strauss, Hauer & Feld ("Akin, Gump") has already been approved by this court in the several cases. That of Arthur Andersen & Co. ("Arthur Andersen") has not yet been approved. Because of the interrelated nature of these cases the court became concerned about the representation of all of the debtors by one provider of a given professional service. As the proceedings progressed the court's concern grew, which prompted the court to issue an order captioned "Order Requiring Akin, Gump, Strauss, Hauer & Feld to Show Cause Why Professionals Should Not Be Disqualified From Representation of Certain Debtors" ("Show Cause Order"). The official unsecured creditors committee of Diamond Lumber, Inc. filed an objection to Akin, Gump's continued employment and argued through their counsel at the hearing held on June 1 and 2, 1987.

## I. BACKGROUND OF AKIN, GUMP'S REPRESENTATION OF THE DEBTORS

These proceedings were commenced by the several debtors by the filing of volun-

tary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. sec. 101 *et. seq.* The petitions for Michigan General Corporation ("Michigan General") and Diamond Lumber, Inc. ("Diamond Lumber") were filed on April 22, 1987. The petition for Michigan General Investment Corp. was filed on April 28, 1987. The petitions for Krestmark Industries, Inc. ("Krestmark"), Krestmark, Inc. ("Krestmark, Inc."), and Eastern Building Supply Company, Inc. ("Eastern Building") were filed on May 8, 1987. The two most significant developments in these cases to date have been the approval by the court of a post-petition secured borrowing arrangement between the several debtors and CIT Group/Factoring Manufacturers Hanover, Inc. ("CIT"), and approval of the sale of substantially all of the assets of Krestmark to a buyer who had been negotiating this sale before the petition was filed.

The several debtors are part of a much larger corporate group which is owned by an entity known as Knoll International Holding Company ("Knoll Int'l."). Knoll Int'l. is controlled by one Marshal S. Cogan. The several debtors are themselves a corporate group, though the court understands that only Diamond Lumber and Krestmark are active in business. Other non-debtor entities, including an entity called Savannah, are also part of this group. The group is organized under the ownership of Michigan General, which is a holding company as to the group. The ownership of the several debtor entities is represented on a chart thusly:

ment Corp. cases. The court's reference to the motion was only to illustrate the ubiquitous problems created in bankruptcy cases by attorneys who are not qualified to represent the estate, but nevertheless do so. The court has made certain other minor modifications to its earlier Opinion which do not affect the order of the court on the employment of the professionals discussed.

The court indicated that it would consider written submissions of the matters which formed the basis of Akin, Gump's motion for rehearing. The court does not question the integrity of the associate attorneys who worked on these cases, but their lack of awareness of

many of the facts which led the court to disqualify the law firm is not a basis for changing the result of this proceeding. The court has carefully considered each of the points made by Akin, Gump in their memoranda on disqualification and denial of compensation. The court finds no indication therein or elsewhere that any purpose would be served by granting their motion for rehearing. The court therefore denies the motion of Akin, Gump for rehearing of the court's Order on Employment of Professionals. An appropriate order shall be issued, and a written memorandum opinion on motion for rehearing is to follow.

Knoll International Holding Company
| 100%
General Felt
| 100%
GFI Nevada, Inc.
| 22.6%
Michigan General Corp. (debtor)
| 100%
Michigan General Investment Corp. (debtor)

100% — 100% — 100% — 100%

Eastern Building Supply Co., Inc. (debtor) — Diamond Lumber, Inc. (debtor) — Krestmark, Inc. (debtor) — Krestmark Industries, Inc. (debtor)

Mr. Alan Feld, a partner in the Akin, Gump law firm is a member of the board of directors of both GFI Nevada, Inc. and of Knoll Int'l. Under these facts, as of the commencement of the case, and of other affiliated entities, Knoll Int'l would be classified as an "affiliate" of each of the several debtor entities. Mr. Feld and hence, Akin, Gump, would be classified as an "insider" of the debtors under Bankruptcy Code Sections 101(2), (30). *Matter of Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206 (5th Cir.1983); *In re Acme-Dunham, Inc.,* 50 B.R. 734 (D.Maine 1985); *In re Michigan Interstate Ry. Co., Inc.,* 32 B.R. 327 (Bankr.E.D.Mich.1983). Shortly after the bankruptcy filings (immediately before the Show Cause Order hearing), the 22.6% interest in Michigan General held by GFI Nevada, Inc. was transferred to a newly formed entity owned by Mr. Ralph Shapiro, the chairman of the board of Michigan General. The consideration for the voting stock transfer $2,000,000.00 note for which only the new entity (not Mr. Shapiro personally) is liable.

The representation of the several debtor entities by Akin, Gump began sometime in 1983. At that time Michigan General was in a condition of financial distress. The efforts to alleviate this problem focused primarily on the acquisition of Diamond Lumber and a debt restructuring plan. An indenture offering of some $110,000,000.00 in unsecured debentures was issued in December of 1983. Michigan General is the obligor for the indenture and Michigan General Investment Corporation, Diamond Lumber, Krestmark, and the non-debtor Savannah Wholesale Company are guarantors. Intimately related to the debt offering is Akin, Gump's continued representation in matters concerning the financial affairs of the debtors. These bankruptcies followed an unsuccessful workout attempt. Aside from the debt offering, Akin, Gump has represented the debtor entities in numerous other matters such as tax, litigation, real estate, secured transactions, etc. In short, Akin, Gump has served as general counsel for the debtor entities for several years prior to the bankruptcy filings. Over this period of time the firm has had as many as sixty-two different accounts billed to Michigan General for the various matters of representation.

The payments by Michigan General to Akin, Gump for these legal services are of particular interest in these proceedings. The firm has collected in excess of $1,500,000.00 in fees over the history of the representation. The record before the court indicates some very significant aspects of Michigan General's payment history. The day before the bankruptcy petitions for Michigan General and Diamond Lumber were filed, Akin, Gump received wire transfers of funds and a cashier's check totalling in excess of $340,000.00. These payments were made at a time when ordinary checks tendered by the debtor entities were of dubious value. The testimony of one of the Akin, Gump partners familiar with the Michigan General situation indicates that the firm knew at the time it received the wire transfer funds and the cashier's check that ordinary checks issued by the debtors may very well have been returned for insufficient funds. The fact that this payment arrangement was thought out in advance by both Akin, Gump and the debtor entities is indicated by resolutions of the board of directors of all of the debtor entities except Krestmark. The court is informed by Akin, Gump that these resolutions had been prepared some time prior to

the filings.[1] Copies of the resolutions, which also authorize the Chapter 11 petitions, were filed as exhibits to the petitions and contain the following language:

> FURTHER RESOLVED that the officers of the Company are authorized and directed to retain the law firm of Akin, Gump, Strauss, Hauer & Feld as legal counsel for the Company in connection with such proceedings under the Bankruptcy Code, *to make payments to Akin, Gump, Strauss, Hauer & Feld to eliminate any possible conflict of interest between such law firm as a creditor of the Company and its counsel,* to pay that firm a retainer.... (emphasis supplied)

The firm has received prior payments, in addition to the specially provided for payment, which are alleged to be preferential. It seems that, as the financial position of the debtor entities worsened, Akin, Gump demanded payment terms of increasing strictness, especially just prior to the bankruptcy filings. Because of the insider status of the firm, it is possible that payments made up to a year prior to the bankruptcy filings will be subject to avoidance and required to be returned to the estates. 11 U.S.C. sec. 547(b). Were a preference action successful and the preferential payments returned to the estates, the firm would have a claim against the estates. 11 U.S.C. secs. 501(d), 502(h). The testimony adduced at the hearings on the qualification issue indicate at the very least that preference claims against the firm could be meritorious.

Apart from its representation of the debtor entities, Akin, Gump has and continues to represent Marshal S. Cogan, who, through ownership of Knoll Int'l. appears to be the ultimate equity holder of each of the debtor entities. This representation is coupled with the representation of debtor entities who have possible claims against each other, and indeed, may have conflicting interests as to the creditors of the various estates. It is asserted that Diamond Lumber and Krestmark have claims against Michigan General of some $18,000,000.00 or more. It is further asserted that Diamond Lumber and possibly other of the debtors may be able to avoid some or all of their contractual obligations under the debenture offering or under the secured debt agreement with CIT.[2]

Lastly there is a matter of the greatest significance in these proceedings. This is the complete failure of Akin, Gump to make a disclosure of these circumstances prior to the court approving their employment by the several debtors. In regard to the matters discussed above, the applications to employ Akin, Gump state only that:

> The law firm of Akin, Gump, Strauss, Hauer & Feld represents no adverse interest to Applicant as Debtor-in-Possession or to the bankruptcy estate in the matters for which they are to be engaged on Applicant's behalf. Its employment would be in the best interests of this estate. To the best of Applicant's knowledge, the law firm has no connection with the creditors or any other party in interest or their respective attorneys.

It is quite obvious that this representation, aside from being patently inaccurate, fails utterly to comply with the disclosure requirements of Bankruptcy Rule 2014. This rule requires, *inter alia,* that all of the connections between the debtor, creditors, and other parties in interest and the professional sought to be employed be set out in the application.[3] It was only after

---

1. The fact that most of this payment was provided by the nondebtor Savannah is further evidence of the planned nature of the transaction.

2. Each debtor entity is obligated under the secured debt agreement which also is cross collateralized. As noted in the text, *supra,* Michigan General is the primary obligor on the unsecured indenture and Diamond Lumber, Krestmark, Savannah Wholesale Co., and Michigan General Investment Co. are guarantors.

3. Implicit in the form of the application is a clear misunderstanding of the nature of the debtor's role and the role of its counsel in Chapter 11 proceedings. It is not appropriate for the debtor to "play dumb" in making an application to employ professionals. If connections between the professional, the debtor, and parties in interest are known, they must be revealed in the application. A failure to do so can call into question the good faith of the debtor in a reorganization proceeding.

the court's Show Cause Order was issued that Akin, Gump submitted a supplemental Rule 2014 statement which revealed most of the facts outlined above.

To summarize the facts relating to Akin, Gump: they are an insider who is quite possibly a creditor and who represents creditors and equity holders of the debtor entities. At the time of the court's approval of their employment as attorneys for the debtors these facts were known to the debtors and Akin, Gump, but not revealed. Until their qualifications were challenged by the court, their connections with the debtors were misstated.

## II. QUALIFICATIONS OF AKIN, GUMP

■ In Chapter 11 proceedings the debtor in possession, with the court's approval, may employ one or more attorneys that do not hold or represent an interest adverse to the estate, and that are disinterested persons. 11 U.S.C. secs. 327(a), 1107. To be qualified for employment, the attorney must meet both independent requirements. That is, the attorney must not be or represent a party that has an economic interest in, rival claim with, or bias against the estate. The attorney must be disinterested, which is to say, not a creditor, equity holder, insider, or have an interest materially adverse to the estate. *In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985); *In re Leisure Dynamics*, 32 B.R. 753 (Bankr.D. Minn.1983) *affirmed* 33 B.R. 121 (D.Minn. 1983). It is quite clear that Akin, Gump falls short of the Bankruptcy Code requirements on several grounds. Nevertheless, they contend that they should be allowed to continue as counsel for the several debtors. Akin, Gump offers several arguments for their retention as counsel for the several debtors. The court will discuss each rationale.

■ It is urged that it is too expensive to retain separate counsel for each debtor.

The expense of educating six different law firms in the various and possibly intricate affairs of the debtors is said to be prohibitive. The practical problem of distracting the management of the debtor entities from their business functions to provide information to new attorneys is said to present a problem that is very serious. Aside from the obvious point that prior experience representing the debtors does not address the bankruptcy issues, past experience with a debtor is not necessarily a crucial factor in counsel's representation in the bankruptcy. To the extent that the old issues are relevant, they will have to be considered anew anyway. To address the merits of the argument: it seems to be the most important factor weighing in favor of retaining Akin, Gump. Yet, the argument suffers from several deficiencies. First there is no showing that the services of Akin, Gump would be economical. Whether reasonable fees would be sought is only part of the problem. When counsel lacks undivided loyalty, any fee may be excessive. It is no economy to forego maximizing the value of an individual estate because an unrevealed or competing interest would be thereby impaired. Indeed, the only debtor in this corporate group with an active business is Diamond Lumber.[4] It is false economy to burden that estate with the expense of attorney fees spent on an effort to maintain the group if there is no concomitant benefit. *Cf., Bohack Corp. v. Gulf & Western Industries, Inc.*, 607 F.2d 258 (2d Cir.1979).

In the Michigan General and Michigan General Investment Corp. cases there has been filed by Akin, Gump a motion for substantive consolidation, which illustrates the defect in the economy argument nicely. Substantive consolidation in bankruptcy may vitally affect substantive rights of parties in interest. *In re Flora Mir Candy Corporation*, 432 F.2d 1060 (2d Cir.1970). It is not a matter to be taken lightly or decided on less than thorough considera-

---

**4.** As noted above, the court has granted a motion to sell all of the assets of the Krestmark estate out of the ordinary course of business, free and clear of liens (which attach to the proceeds), pursuant to a motion which was heard at the same time that the question of professional qualifications was heard. See 11 U.S.C. sec. 363. Krestmark was the only other debtor in this group that, to the court's knowledge, had an active business.

tion. *Id.* This is not to pass upon the merits of the motion, but only to consider it generally and to note that, having been brought by the current attorneys for the several estates, the question of whether it would be in the best interests of a single estate and its creditors alone may very well have been considered secondary to other, ostensibly larger, interests.

 Akin, Gump has represented to the court that, if they are shown to have received preferential payments from the debtors for their pre-petition attorney's fees, they would waive any claim against the estates. There is some authority for the notion that an attorney may cure an otherwise disqualifying conflict by waiving a pre-petition claim against the estate. See *In re Roberts,* 46 B.R. 815, 848–50 (Bankr. D.Utah 1985). Such a course of action may be permissible under circumstances other than exist in the present case. It is true that an attorney is not disqualified from representing a debtor in Chapter 11 proceedings solely because the attorney represented the debtor pre-petition. 11 U.S.C. sec. 1107(b). Obviously, a debtor in possession suffering from financial difficulties may not have paid all fees or salary owing professional persons in its employ before it filed its petition, yet continued employment of those professionals by the debtor may be in the best interest of the estate and the creditors. As Collier makes clear, the purpose of Section 1107(b) is to allow the continuation of services by essential professionals who, other than by reason of pre-petition employment, would not fail to meet the requirements of Section 327. *5 Collier on Bankruptcy,* para. 1107.03 (15th ed. 1987). *Compare,* Bankruptcy Act of 1898 secs. 156–159, 191, 11 U.S.C. secs. 556–559, 591 (repealed 1978) (officers, directors, and professional employees of a debtor could not serve as trustee or attorney to the estate, and their continued employment was subject to approval by the court). However, the type of situation to which Section 1107(b) is addressed is not present in the case at bar. Here, the fact that Akin, Gump represented the several debtors pre-petition is not the sole factor arguing against continuation of the attorney-client relationship. Moreover, the reluctance of the firm to admit its creditor status before a judicial determination of the issue necessarily implies an adversarial relationship. There is also the ethical constraint against the acceptance of employment when the interests of an attorney may impair his independent professional judgment, which militates against allowing counsel to at once represent an estate in bankruptcy and be sued by the same estate over attorney fees paid. DR 5–105; Title 14 App. Art. 12, sec. 8 (Vernon 1973) (Texas Code of Professional Responsibility). Although the court has no doubt that the "waiver" of creditor status offered by Akin, Gump is wholly ineffectual to cure the conflict of interest created when a putative creditor represents the estate, if there were any doubt it would be resolved against the representation of the estates. See *In re Paine,* 14 B.R. 272 (W.D.Mich. 1981); *In re Thompson,* 54 B.R. 311 (Bankr.N.D.Ohio 1985); *Matter of Cropper Company, Inc.,* 35 B.R. 625 (Bankr.M.D. Ga.1983); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328 (E.D.Pa.1982); *In re CODESCO, Inc.,* 18 B.R. 997 (Bankr.S. D.N.Y.1982).

It is argued that the existence of intercompany claims and Akin, Gump's simultaneous representation of the corporate parent and subsidiaries are not disqualifying facts. The case of *In re O.P.M. Leasing Services, Inc.,* 16 B.R. 932 (Bankr.S.D.N.Y. 1982), is relied upon as support for this assertion. The *O.P.M. Leasing* case is considerably different from the ones at bar, yet there Bankruptcy Judge Lifland noted "there are good reasons both for and against separate administrations", *Id.* at 938; citing *In re National Public Services Corporation,* 68 F.2d 859, 862–63 (2d Cir. 1934) *cert. den.* 292 U.S. 641, 54 S.Ct. 773, 78 L.Ed. 1492. The problem here antedates any question regarding joint administration or consolidation. The issue here is whether the attorney who will argue the issues is qualified to do so. *O.P.M. Leasing* simply does not sufficiently resemble the case at bar to support Akin, Gump's argument. Aside from the fact that in

*O.P.M. Leasing* there was full disclosure of the attorney's connections with the two estates represented, the representation concerned only a special matter with regard to which the court found dual representation to be proper. The *O.P.M. Leasing* decision does not stand for the broad condoning of conflicting representations which Akin, Gump seeks in the case at bar.

It is stated that Akin, Gump either does not represent Marshal S. Cogan in relation to these bankruptcy cases or does not represent him at all. This is argued to alleviate the conflict between representation of the estates and of the equity holder. The court can only say with regard to this argument that it lacks credibility. Testimony at the hearing revealed that Akin, Gump has received somewhere in the neighborhood of $3,000,000.00 in fees from interests controlled by Mr. Cogan over the past few years. The statement that Akin, Gump no longer represents Mr. Cogan in relation to these bankruptcies is rejected by the court.

■ The post-petition transfer of the controlling interest in the voting stock of Michigan General by GFI Nevada, Inc. is argued to have cured the insider status of the firm as to the several debtors. The transfer was to a newly created entity owned by the chairman of the board of Michigan General. It is obviously a technical device having more form than substance. Nevertheless, the definition of "insider" in 11 U.S.C. sec. 101(25), is not exclusive. *Matter of Missionary Baptist Foundation of America, Inc., supra.* GFI Nevada, Inc. has received a promissory note made by the newly created corporation and because of the closeness of the relationship, undoubtedly remains in a position to exert considerable influence over the affairs of the new entity and its owner, Mr. Shapiro.[5] The court is not willing, under these circumstances, to find that the insider status of Akin, Gump has undergone any substantial change as a result of a

transaction which merely changes the form of the exercise of influence. See *In re Michigan Interstate Ry. Co., Inc., supra.*

■ Lastly, it is argued that special counsel could be retained to cure any deficiencies in Akin, Gump's representation or qualifications. This argument is disingenuous. If special counsel are needed to address all of the deficiencies discussed above, the several estates might as well have new general counsel. It hardly serves the interests of economy to save the estates the expense of separate general counsel by having them support the burden of a single general counsel and adversarial special counsel. The concept of special counsel retained to insure the integrity of general counsel is repugnant to the basic fiduciary obligations which general counsel must undertake when it represents the estate. See *In re Chicago Rapid Transit Co.,* 93 F.2d 832 (7th Cir.1937). Moreover, such an arrangement could only result in either a massive distraction from the urgent business of administering these estates or a "conspiracy of silence" such as was condemned by the Fifth Circuit in *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249 (1986). In addressing the "cure by special counsel" concept, it was said in *In re National Public Service Corp.,* 68 F.2d 859, 863 (2d Cir.1934): "[I]t would be possible, whenever a real conflict arose, to have the trustee represented by two separate attorneys.... But that is a cumbersome method at best, and besides it presupposes that all [conflicts will be revealed]. We are not impressed with this as a desirable way to administer an estate." It appears to this court that only in extraordinary circumstances could there exist sufficient justification for the concept of special counsel hired to police general counsel.

■ The court is cited to *In re O'Connor,* 52 B.R. 892 (Bankr.W.D.Okla. 1985). In that case the ownership of a small amount of stock in the corporate

---

**5.** Because of his ownership of the new entity which recieved the voting stock of Michigan General, it seems probable that Mr. Shapiro is currently disqualified to continue as an officer of the debtor entities. However, because of the

circumstances surrounding the stock acquisition, the court will allow Mr. Shapiro to demonstrate that he is qualified to be employed by the debtors as an officer. See *Wolf v. Weinstein,* 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904 (1963).

debtor and the simultaneous representation of the bankrupt principals of the debtor corporation, with full disclosure at the outset of the case, were held not to disqualify the debtors' counsel. Remedial measures of the sort suggested here were found sufficient to make any conflict less than "actual". Counsel's stock ownership was found to be *de minimus* and not impairing their disinterestedness. *Compare, In re Heatron*, 5 B.R. 703 (Bankr.W.D.Mo.1983) (counsel not disqualified because of creditor status resulting from uncompensated pre-petition representation); *In re Anver Corp.*, 44 B.R. 615 (Bankr.D.Mass.1984) (applying plain language of the statute). There are limited qualifications to the prohibition of dual representation under Section 327(a), but that does not relax the requirement of disinterestedness. This court is not inclined to measure a degree of disinterestedness or interestedness to see whether it is sufficient to qualify or disqualify. A lack of disinterestedness on the part of a professional, as defined in the Bankruptcy Code, 11 U.S.C. sec. 101(13), is, without any exception known to this court, a disqualifying fact. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951) (This is not because such interests are always corrupt but because they are always corrupting.); *In re GHR Energy Corp.*, 60 B.R. 52 (Bankr.S.D.Tex.1985). The harm of conflicting dual representation and of a lack of disinterestedness is the injustice of partiality in an officer of the bankruptcy court who is charged with a duty of evenhandedness. Speaking of an analogous situation, our Supreme Court said:

> Many abuses have occurred in the bankruptcy practice and none is more frequent than that by which the attorney for petitioning creditors becomes counsel for the trustees subsequently appointed. This mingling of interests, frequently conflicting, is generally regarded by courts as working to the detriment of one of the parties and to the undue advantage of another. Experience has shown the wisdom and necessity of separating the function and obligation of counsel by forbidding the employment in different interests of the same person.... The dangers of giving entire freedom of selection of counsel to the trustees lies in the temptation of the attorney for some creditors when he becomes counsel for the trustees, to use his function as representative of all the creditors, unjustly to favor or oppose particular creditors or to induce the trustee to do so.

*Weil v. Neary*, 278 U.S. 160, 168, 49 S.Ct. 144, 147, 73 L.Ed. 243 (1929).

In these proceedings Akin, Gump, by purportedly representing the several bankruptcy estates when in fact it was representing creditors, equity holders, and was not disinterested, placed itself by artifice and lack of disclosure in the central position of the bankruptcy process and thereby gained an access to unfair and unjust advantage over other parties in interest. The possibility of extreme prejudice to other interests is vividly dramatized by the very prompt applications for post-petition secured credit cross-collateralized between the estates, the sale of substantially all the assets of Krestmark, and the pending applications for substantive consolidation of the estates. Only the most diligent of parties in interest could have acted quickly enough to protect themselves if their interests differed.

The court has no hesitation in ordering Akin, Gump to cease its representation of these estates. The requirements of the Bankruptcy Code and Rules set higher standards than Akin, Gump has shown itself inclined to meet. Akin, Gump will be relieved of its duties as soon as qualified counsel can be retained and given sufficient background information.

There has not been an application for interim compensation in these cases by Akin, Gump. There is no need for such because, based on the failure to qualify under Section 327 and the failure to disclose, the court now denies all compensation and, additionally, reimbursement of all out-of-pocket expenses that are not shown to have been of benefit to the estates. 11 U.S.C. sec. 328(c); *Woods v. City National Bank and Trust Co. of Chicago*, 312 U.S.

**107**

262, 61 S.Ct. 493, 85 L.Ed. 820 (1940); *In re Georgetown of Kettering, Ltd.,* 750 F.2d 536 (6th Cir.1984); *In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988 (2d Cir.1931); *In re Chou-Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr.W.D.Ky.1983). Akin, Gump is required to place all funds, whether in the form of a retainer, reimbursement, or compensation, it received in regard to this case, regardless of the source, with the clerk of the court where the funds will be held at interest pending further order of the court. Application for reimbursement of expenses that benefitted the estates will be considered when other like claims are heard.

 Yet, it is a hollow sanction to deny fees against the estate when, by dual representation, counsel has shown the possibility that it may collect its fee from another source. Counsel for a debtor in possession is a fiduciary to the court. *Brown v. Gerdes,* 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944); *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986); *Matter of Arlan's Department Stores, Inc.,* 615 F.2d 925 (2d Cir.1979). They represent a fiduciary as well. The debtor in possession owes a duty to treat its creditors evenly, even if it cannot treat them well. 11 U.S.C. sec. 1107; *In re Glover Construction Co., Inc.,* 30 B.R. 873 (Bankr.W.D.Ky.1983). This duty devolves to its counsel as well. *Wolf v. Weinstein,* 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963); *In re Philadelphia & Western Ry. Co.,* 64 F.Supp. 738 (E.D.Pa.1946) (one who assumes a fiduciary relationship in connection with a corporate reorganization must conform to the standards of conduct which the law imposes on fiduciaries).

 A sanction should be tailored to address the harm it is intended to remedy. *Cf., Thomas v. Capital Security Services, Inc.,* 812 F.2d 984 (5th Cir.1987); *Davis v. Veslan Enterprises,* 765 F.2d 494 (5th Cir. 1985). Here the harm is an abuse of a judicial process and a possible reduction in the esteem held for the bankruptcy court, as well as a possible harm to the interests of a party in interest. The court feels the the denial of compensation is sufficient to vindicate the integrity of the bankruptcy court. However, in the interests of fairness and equity, the court will impose a further sanction based upon demonstrated harm to a party in interest (beyond the disappointment usually attendant in bankruptcy), that resulted from the breach of duty by Akin, Gump. *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The court's power to retain its jurisdiction over Akin, Gump and to order this sanction is based upon the powers conferred by Congress under 11 U.S.C. sec. 105; *Steelman v. All Continent Co.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937), and upon the court's inherent powers. *Roadway Express, Inc.,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

### III. EMPLOYMENT OF ARTHUR ANDERSEN & COMPANY

 At the June 1 and 2 hearings on the qualifications of professionals, the court heard testimony regarding Arthur Andersen as well as Akin, Gump. The testimony regarding Arthur Andersen and their affidavit setting forth their relation to the debtors and the estates demonstrates no disqualifying prior connection. They will be employed in this case principally to assist the debtors in complying with bankruptcy reporting requirements and to prepare accounting statements required by the Securities and Exchange Commission. In the future, if the scope of the employment is to be expanded, the debtor wishing to expand the employment will be required to make a supplemental application. The reason for this careful monitoring lies in the nature of the accounting services. The court is satisfied that, unlike Akin, Gump, Arthur Andersen may be employed by all of the debtors for the purpose of preparing bankruptcy reports, audits, accounting statements, and related opinions. This is because they are disinterested and are not viewed strictly as a representative of the estate. The distinction between the function of accountants and attorneys was recognized in *United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984). There the Court stated:

The *Hickman*[6] work product doctrine was founded upon the private attorney's role as the client's confidential advisor and advocate, a loyal representative whose duty it is to present the client's case in the most favorable light. An independent certified accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporations creditors and stockholders, as well as to the investing public. This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.

Thus, the function of Arthur Andersen as a public accountant permits dual employment by the estates because the function is one of reporting rather than one of advocacy. The preparation of consolidated accounting statements is an accepted practice in public accounting. See e.g. SEC Regulation S–X, 17 C.F.R. sec. 210 (1986) (reporting requirements of publicly held companies). Because of the public ownership of GFI Nevada, Inc. and the public distribution of the Michigan General debentures, consolidated reporting to the SEC appears to be necessary in these cases. The assisting of the debtors in preparing the required bankruptcy reports is likewise distinguished from advocacy. There is no reason why these accounting functions, even though representative of the debtors, need to entail adverse representation. The unsecured creditors committee of Diamond Lumber has objected to Arthur Andersen's employment by more than one of the estates, but under the circumstances the court sees no reason to believe that an adverse situation is created solely by the fact of dual employment.

As noted in the affidavit accompanying the applications to employ Arthur Andersen, it is very probable that the firm provides services to at least a few creditors of these estates. There has been no objection to Arthur Andersen's employment by another creditor. While the court might, under other circumstances, feel constrained to inquire further into the matter, there has been no specific objection to Arthur Andersen's employment by the debtors and the court does not perceive any apparent conflicts between the public accounting and bankruptcy reporting services to be provided and a perchance representation of a creditor to one of the estates.

The application to employ Arthur Andersen stated that certain additional areas of employment may be undertaken in the future. These areas, such as tax consulting, do not appear to be strictly public accounting functions. Thus, employment in these areas may have to be considered in a different light than the public accounting and bankruptcy reporting functions. Therefore, the employment of Arthur Andersen by the several debtors as public accountants is approved. Employment of the accounting firm in other functions will be considered upon future application.

The court has prepared the order and entered it of record prior to issuance of this memorandum.

---

**6.** *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).