In re Lewis J. BUSCONI, Debtor.

James H. BARNHILL, Trustee, Plaintiff,

v.

Elaine J. VAUDREUIL, Defendant.

Bankruptcy No. 91–40290–JFQ.
Adv. No. 93–4140.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 3, 1995.

---

James H. Barnhill, Peters and Erskine, Worcester, MA, for Creditors' Trustee.

Susanne R. Blatt, Cosgrove, O'Connell and Blatt, Worcester, MA, for Elaine J. Vaudeuil.

### OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

James H. Barnhill (the "Trustee") brings this complaint against Elaine J. Vaudreuil (the "Defendant"), the former wife of Lewis J. Busconi (the "Debtor"), to avoid as preferential certain transfers made pursuant to the parties' divorce judgment. All but one of the transfers occurred between ninety days and one year prior to the Debtor's chapter 11 filing, so they are voidable only if the Defendant was then an "insider." The Trustee moves for partial summary judgment on the insider issue and for full summary judgment on a transfer made two days before the bankruptcy filing. I rule in favor of the Defendant except as to that last transfer.

The Defendant was not an insider at the time of the earlier transactions because (i) she was not a "relative" of the Debtor even during the period before their divorce judgment became absolute, and (ii) she did not have the type of relationship with the Debtor required of one who is not a relative. I also hold the conveyance of the parties' marital home is not voidable for the additional reason the transfer was not for an antecedent debt.

### I. FACTS

The facts are not at issue. After having lived with the Debtor for several years, the Defendant in 1981 pressed the Debtor to marry her. The Debtor agreed, but insisted she sign an antenuptial agreement so that his obligations would be fixed in the event of a divorce. They had each been previously married and divorced. On May 9, 1981, the day before their marriage, the parties signed an antenuptial agreement. The Debtor promised in the agreement to make the following payments and transfers to the Defendant if there were a later divorce: (i) a lump sum payment of $250,000, (ii) transfer of the marital home then worth $750,000 and furnishings at 44 Oak Hill Road, Southboro, Massachusetts, (iii) payment of any federal or state income taxes incurred by the Defendant due to receipt of the foregoing, and (iv) monthly payments at an annual rate of $40,000, adjusted for changes in the cost of living, which were to survive any remarriage by the Defendant. As consideration for these obligations, the Defendant waived her right to any other claims for alimony or property.

The antenuptial agreement was prophetic. The Defendant filed a complaint for divorce on September 27, 1988. The divorce proceeding was bitter and protracted. The Defendant sought to set aside the antenuptial agreement on various grounds including coercion and fraud. She placed a *lis pendens* on record giving notice of her claim to the marital home. Judge Arline S. Rotman, of the Massachusetts Probate and Family Court, upheld the agreement. The judge found the agreement was fair and reasonable both at the time of its execution and at the time the divorce petition was filed. The judge took into account that the parties had

no children of their marriage and the Defendant was making a good living in her own real estate business, which she operated separately from the Debtor's more extensive real estate and business operations.

On June 11, 1990, Judge Rotman entered a divorce judgment "nisi" which was declared to become "absolute" ninety days later.[1] Judge Rotman ordered the Debtor to honor his obligations under the antenuptial agreement by paying $250,000, making the agreed monthly payments and transferring the marital home and furnishings in Southboro, free of liens and encumbrances. The judgment incorporated the antenuptial agreement by reference but stated the agreement was not merged into the judgment.

The Debtor was painfully (presumably for both of them) slow in making the $250,000 lump sum payment and in honoring his obligation to transfer the home. He paid $104,000 on August 30, 1990, which was within the ninety day *nisi* period. On September 20th, after the divorce judgment became absolute, he transferred the Southboro home to the Defendant, but he failed to pay off the mortgage on the property. The Defendant hauled him into court. On October 29, 1990, Judge Rotman found the Debtor guilty of contempt and ordered him to pay, by November 5th, the remaining $146,000 due on his $250,000 obligation, plus interest.[2] On November 5th, the Debtor appeared in court with a $75,000 check which he delivered to the Defendant's lawyer. Judge Rotman found the Debtor had not purged himself of contempt and sentenced him to jail. Before the day was out, the Debtor paid the $75,524 principal and interest balance due on the $250,000 debt. On February 5, 1991, the Debtor finally paid the balance due on the Southboro mortgage by paying $24,012.79 to Fleet Bank, the mortgagee. Two days later, on February 7, 1991, the Debtor filed a chapter 11 petition with this court.

In summary, the Trustee seeks to avoid the following transfers falling into the categories indicated:

| Date | Within Divorce Nisi Period | After Nisi Period | Within 90 Days Prior to Filing |
|------|---------------------------|-------------------|-------------------------------|
| 8/30/90 | $104,000 | | |
| 9/20/90 | | Home & Contents | |
| 11/5/90 | | $75,000 | |
| 11/5/90 | | $75,524 | |
| 2/5/91 | | | $24,012.79 |

## II. DEFENDANT AS "RELATIVE" DURING NISI PERIOD

The elements of a voidable preference, subject to various defenses not relevant here, are set forth below.[3] If the transferee is an "insider," section 547 of the Code permits the avoidance of transfers made between ninety days and one year before the filing of the

1. *See* Mass.Ann.Laws ch. 208, § 21 (Law.Co-op.1994).

2. Judge Rotman entered no order concerning the mortgage on the Southboro property except to enjoin the Debtor from borrowing funds or encumbering any of his property until the mortgage was discharged.

3. Section 547(b) of the Code provides:
   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
       (A) on or within 90 days before the date of the filing of the petition; or
       (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
       (A) the case were a case under chapter 7 of this title;
       (B) the transfer had not been made; and
       (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
   11 U.S.C. § 547(b) (1988).

bankruptcy petition.[4] The Trustee takes the position there can be no question the Defendant was an insider prior to September 10, 1990, when the divorce judgment became absolute, so that the August 30th payment of $104,000 is clearly voidable if the Debtor was then insolvent. I disagree.

█ The term "insider" includes a "relative of the debtor...."[5] A "relative," in turn, "means individual related by affinity or consanguinity within the third degree as determined by the common law...."[6] There being no blood relationship between the parties, the question is whether the Debtor and Defendant were related by "affinity." A relationship by affinity, under either the common law or civil law, is the relationship enjoyed between one spouse and the blood relatives of the other spouse.[7] Each spouse is related by affinity to the blood relatives of the other in the same degree the other is related to them by blood.[8] Although the relationship by affinity is based upon a treatment of the two spouses as one, they are not related to each other by affinity.[9] The relationship of husband and wife being by marriage rather than affinity, statutes of descent and distribution typically make specific reference to the "husband" or "wife" of the decedent.[10]

█ The Defendant was therefor not related to the Debtor by affinity, and hence was not a relative even before the parties' divorce judgment became absolute. If Congress intended to include a debtor's spouse as his relative, and legislative history indicates it did,[11] Congress should have done what state legislatures do in enacting statutes of descent and distribution. It should have expressly mentioned a spouse. Congress did not do so, and it is not up to this court to rewrite the statute. I must apply the technical definition contained in the Code.[12]

Congress, in any event, apparently did not have in mind the type of marital relationship that exists after a divorce judgment issues but before it becomes absolute. It is true the relationship has significance under Massachusetts law. A judgment *nisi* encourages reconciliation, prevents remarriage during the *nisi* period, and if one spouse dies during the period permits the other to inherit.[13] Those matters bear no relevance, however, to the purpose Congress had in providing an extended period for avoidable transfers to an insider. That purpose was to give "closer scrutiny" to transfers made to those who have a "close relationship with the debtor."[14] As discussed below, the Defendant's relationship with the Debtor was hardly "close." Indeed, when one considers the type of relationship Congress envisioned, perhaps the Defendant would not qualify as a "relative"

---

**4.** *Id.*

**5.** 11 U.S.C. § 101(31) (1988).

**6.** 11 U.S.C. § 101(45) (1988).

**7.** 23 Am.Jur. 2d, *Descent and Distribution* § 52 (1983); *Zakroff v. Markson,* 64 B.R. 663, 666 (Bankr.D.Md.1986).

**8.** 23 Am.Jur. 2d *Descent and Distribution* § 52 (1983).

**9.** *Id.*

**10.** *See, e.g.,* Mass.Ann.Laws ch. 190, § 1 (Law.Co-op.1994).

**11.** The House report assumes a spouse is an insider. It states:

[I]f ... the transferee was a spouse of the debtor at the time of the transfer sought to be avoided, then the transferee would be a relative and subject to the insider rules....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 313 (1977).

**12.** *Contra Loftis v. Minar (In re Montanino),* 15 B.R. 307 (Bankr.D.N.J.1981) (construing affinity to mean any close relationship, notwithstanding the reference in the definition to a common law meaning). *See also Rush v. Riddle (In re Standard Stores, Inc.),* 124 B.R. 318 (Bankr.C.D.Cal. 1991) (concluding relationship by affinity of former brothers-in-law ended with divorce and criticizing *Montanino* decision); *Dewoskin v. Brady (In re Hydraulic Indus. Prods. Co.),* 101 B.R. 107 (Bankr.E.D.Mo.1989) (deeming Missouri statutory and case law applicable despite statute's reference to common law in general).

**13.** Mass Ann.Laws ch. 208, § 21 (Law.Co-op.1994); *Ross v. Ross,* 385 Mass. 30, 430 N.E.2d 815 (1982); *Pine v. Pine,* 323 Mass. 524, 83 N.E.2d 171 (1948).

**14.** H.R.Rep. 595, 95th Cong., 1st Sess. 312 (1977).

during the *nisi* period even if a debtor's spouse was expressly included in the definition of relative. I need not, however, decide that question.

## III. *DEFENDANT A NONRELATIVE "INSIDER"*

The property transfer of September 20th and the cash payments of November 5th occurred after the parties' divorce became final on September 10th and prior to the commencement on November 9th of the ninety-day prepetition preference period applicable to all transferees. To avoid these transfers, therefor, the Trustee must rely on the general concept of "insider" rather than on the specific definition of "relative." And, given my prior ruling on the Defendant's status as of August 30th, the same is so as to the $104,000 payment of that date.

■ It is of course clear that a party can be an insider even though not included in one of the categories listed in the definition. In defining the term, Congress stated it "includes" the described categories.[15] The word "includes" is "not limiting."[16] Congress therefor had an expansive view of those who could be an insider.[17]

Legislative history gives limited guidance on the kind of relationship Congress had in mind. The House and Senate Reports state:

An insider is one who has a sufficiently close relationship with the debtor that his

conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.[18]

We are left to surmise why the "close relationship" warrants "closer scrutiny." Statutory examples of an insider offer some help. Among those expressly made insiders are relatives of the debtor, general partners of a partnership debtor, directors and officers of a corporate debtor, and those "in control" of the debtor.[19] Also included are partnerships of which the debtor is a general partner, and corporations of which the debtor is a director or officer.[20] It would seem from these examples that Congress intended to include those whom the debtor looked kindly upon and those who have significant influence on the debtor even though not "in control" of the debtor. One writer suggests Congress intended to ameliorate the potential beneficial leverage that some creditors might have in dealing with the debtor.[21]

■ To date, the decisions have dealt for the most part with questions concerning a transferee's ability to exert a controlling influence over the debtor so as to obtain the transfer in question. The debtor's lawyer, for example, is not considered an insider merely because of the lawyer-client relationship, but only if the relationship is such that the lawyer is likely to have actually exercised influence over the debtor to obtain the transfer.[22] Other relationships follow the same

15. Section 101(31) provides:

(31) "insider" includes—
(A) if the debtor is an individual—
(i) relative of the debtor or of a general partner of the debtor;
(ii) partnership in which the debtor is a general partner;
(iii) general partner of the debtor; or
(iv) corporation of which the debtor is a director, officer, or person in control;
(B) if the debtor is a corporation—
(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer, or person in control of the debtor;
. . . .
11 U.S.C. § 101(31) (1988).

16. 11 U.S.C. § 102(3) (1988).

17. *E.g., Wilson v. Huffman (In re Missionary Baptist Found. of America, Inc.),* 712 F.2d 206, 210 (5th Cir.1983); *In re Michigan Gen. Corp.,* 77 B.R. 97, 105 (Bankr.N.D.Tex.1987), *reh'g denied,* 78 B.R. 479 (Bankr.N.D.Tex.1987); *Jackson Purchase Prod. Credit Assoc. v. Taylor (In re Taylor),* 29 B.R. 5, 7 (Bankr.W.D.Ky.1983).

18. S.Rep No. 989, 95th Cong., 2d Sess. 25 (1978); H.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977).

19. 11 U.S.C. § 101(31) (1988).

20. *Id.*

21. Raymond T. Nimmer, *Security Interests in Bankruptcy: An Overview of Section 547 of the Code,* 17 Hous L.Rev. 289, 292 n. 10 (1980).

22. *Kepler v. Schmalbach (In re Lemanski),* 56 B.R. 981 (Bankr.W.D.Wis.1986) (debtor's relationship with his attorney such that required

pattern. The wife of a vice-president of the debtor's primary lender has been held not to be an insider because she had no real influence over the debtor.[23]

At the times of the transfers here in question, the Defendant's relationship with the Debtor neither encouraged the Debtor to look kindly upon her nor permitted her to exercise significant influence over the Debtor. The parties' divorce could hardly have been more acrimonious. The Defendant attempted to prove the Debtor was guilty of the most extreme forms of civil misconduct—fraud and coercion. The Debtor, in turn, was faced with exactly what he intended to avoid through execution of the antenuptial agreement—a grab for a major portion of his extensive assets in a divorce proceeding. Rather than being prompted by a close relationship, the transfers the Trustee seeks to avoid were coerced by the hard reality of a court order and the threat of incarceration for contempt of that order. The parties, in short, had a relationship not untypical of those who are divorced or in the process of divorce. Courts have for this reason ruled a former spouse is not an insider.[24]

The Trustee relies upon *Wiswall v. Tanner (In re Tanner)*.[25] The facts there were quite different. The debtor's homosexual relationship with another woman had been ended by the other woman physically evicting the debtor from the home the two owned jointly. The other was the more dominant of the two and maintained her influence over the debtor even after the eviction. The debtor owed her some money and she compelled the debtor to sign over the debtor's interest in the home to her. In the present case, the Defendant maintained no such influence over the Debtor. The Defendant needed the court's help every step of the way.

The Trustee contends that the Defendant had the power to exercise control over the Debtor concerning these transfers through her ability to obtain court orders. That type of power, however, emanates from legal rights and not the parties' relationship. Any creditor has it. It does not make the creditor an insider.[26]

## IV. ABSENCE OF ANTECEDENT DEBT FOR TRANSFER OF HOME

There is another reason why the Trustee is unable to avoid the transfer of the marital home and contents. A transfer is avoidable as a preference only if it is made "for or on account of an antecedent debt owed by the debtor before such transfer was made...."[27] A "debt" is "liability on a claim."[28] There are two types of claims under the Code. One is a monetary claim called a "right to payment."[29] That obviously has no application to the home transfer. The other type of claim is described as follows:

> right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to

degree of influence or control lacking); *see also In re Rimell*, 111 B.R. 250 (Bankr.E.D.Mo.1990), aff'd, 121 B.R. 253 (E.D.Mo.1990) (nonbankruptcy lawyer deemed to lack control to make him insider and thus qualified to be counted as a creditor for purpose of invalidating involuntary petition filed by only one creditor); *Michigan Gen. Corp.*, 77 B.R. 97 (employment of attorney denied because of interest of attorney as evidenced by ability to obtain arguably preferential payment of prepetition fee).

23. *Torcise v. Cunigan (In re Torcise)*, 146 B.R. 303 (Bankr.S.D.Fla.1992).

24. *E.g., Miller v. Schuman (In re Schuman)*, 81 B.R. 583 (9th Cir. BAP 1987); *cf. Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008 (5th Cir.1992) (former wife of debtor who loaned him money after divorce deemed insider in view of their continuing friendly relationship

and joint hostility toward other party in litigation whose expense prompted loan); *Standard Stores*, 124 B.R. 318 (former brother-in-law of debtor's principal deemed insider even after divorce because of continued friendship as evidenced by loan).

25. 145 B.R. 672 (Bankr.W.D.Wash.1992).

26. *E.g., Jahn v. Economy Car Leasing, Inc. (In re Henderson)*, 96 B.R. 820 (Bankr.E.D.Tenn.1989) (ability of former employer to obtain repayment of embezzled funds through use of criminal process insufficient to make it insider).

27. 11 U.S.C. § 547(b)(2) (1988).

28. 11 U.S.C. § 101(12) (1988).

29. 11 U.S.C. § 101(5)(A) (1988).

judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[30]

The Defendant's rights with respect to the home and contents prior to the conveyance fall outside the scope of this provision. Under the antenuptial agreement, she certainly had the right to the equitable remedy of a court order compelling the transfer if the Debtor was in breach of his obligation to make the transfer.[31] And in the divorce judgment she in fact obtained such a court order. But the Debtor was not in breach of his obligation concerning the home, except perhaps with respect to payment of the mortgage. To the contrary, it was the Defendant who sought to set the agreement aside and the Debtor who wished to abide by it. There being no "breach of performance" as required by the statute, the Defendant had no claim.[32] There was therefor no antecedent debt.[33]

The Defendant contends there was no transfer of the home or cash because she already owned the home and had equitable rights in the cash payments as the beneficiary of a constructive trust. She cites this court's decision in In re Perry.[34] Under a constructive trust theory, however, the transfer of such beneficial interests would presumably have been made at the time of the divorce judgment, but no earlier because up until then the Defendant was contesting the agreement upon which the transfers were based. The divorce judgment of June 11, 1990 was also within the one-year period applicable to insiders, so a constructive trust theory is of no aid to the Defendant. In any

event, Perry has no application here. In the present case, there was an agreement requiring the transfers so there is no occasion to determine whether constructive trust principles apply. Perry, moreover, involved a wife with no independent means of support.

## V. TRANSFER OF FEBRUARY 5, 1991

There remains for consideration the Debtor's February 5, 1991 payment of $24,012.79 to Fleet Bank in discharge of the mortgage on the marital home, as required by the antenuptial agreement and divorce judgment. Because this payment was within ninety days prior to the Debtor's chapter 11 filing, the Trustee does not have to show the Defendant was then an insider. And the Trustee has the benefit of a presumption the Debtor was then insolvent.[35] The Defendant has offered nothing to rebut that presumption. Here, unlike the house transfer, the transfer was made for an antecedent debt because of the Defendant's prior right to payment. Nor is it any defense that payment was made to Fleet Bank rather than the Defendant. The Trustee is entitled to avoid a transfer made "to or for the benefit of a creditor."[36] The Defendant (as well as Fleet Bank) was a creditor. The payment was clearly made for her benefit. It is avoidable and recoverable from the Defendant as the party for whose benefit the transfer was made.[37]

## VI. CONCLUSION

The Trustee is not entitled to avoid the transfers made outside the ninety-day pre-

---

**30.** 11 U.S.C. § 101(5)(B) (1988).

**31.** The definition of a claim is to be applied to the Defendant's rights under the agreement and not the court order. A claim is defined as an equitable remedy "whether or not . . . reduced to a judgment." 11 U.S.C. § 101(5)(B) (1988).

**32.** Had the Debtor repudiated the agreement, the Defendant's rights may then have constituted a claim. If after the Debtor's repudiation she preferred to receive the property's value rather than title, she perhaps could have obtained a judgment for that value. Arguably, however, the divorce court even then would have ordered a transfer because of the simplicity in effecting the transfer by means of such an order. Under Massachusetts law, if an ordered transfer is not made voluntarily the court order operates as a

deed. Mass.Ann.Laws ch. 208, § 34A (Law.Co-op.1994). There being no breach, none of this is before me.

**33.** See also Harman v. Sorlucco (In re Sorlucco), 68 B.R. 748 (Bankr.D.N.H.1986) (simultaneous creation and execution of obligation through court order involves no antecedent debt).

**34.** 131 B.R. 763 (Bankr.D.Mass.1991).

**35.** 11 U.S.C. § 547(f) (1988).

**36.** 11 U.S.C. § 547(b)(1) (1988).

**37.** 11 U.S.C. § 550(a)(1) (1988).

petition period because the Defendant was not an insider at the time of the transfers. Nor was the transfer of the home made for an antecedent debt.

Judgment may issue on a motion for summary judgment in favor of the nonmoving party if on the facts and law that party is entitled to judgment.[38] A separate judgment has accordingly issued dismissing all counts of the complaint except the count concerning the mortgage payment. With respect to that count, a judgment has issued against the Defendant in the sum of $24,012.79, plus interest.

## JUDGMENT

James H. Barnhill (the "Trustee"), having filed a complaint to avoid as preferential certain transfers made to Elaine J. Vaudreuil (the "Defendant"), has moved for partial summary judgment on the issue of whether the Defendant was an insider and for full summary judgment on a transfer of $24,012.79 made two days before the bankruptcy filing. The court has today issued an opinion containing its conclusions of law. In accordance therewith, it is hereby

ORDERED and ADJUDGED, that

1. Counts 1 through 4 of the complaint are dismissed with prejudice.

2. The Trustee shall recover of the Defendant the sum of $24,012.79, plus prejudgment interest at the rate of 12% per annum from June 7, 1993 to the date of the present judgment, plus postjudgment interest at the rate of 7.34% per annum, the rate set forth in 28 U.S.C. § 1961(a), from the date of the present judgment until payment is made.

---

**38.** 10A Charles A. Wright, Arthur R. Miller and Mary K. Kane, Federal Practice and Procedure: § 2720 (2d ed. 1983).