**In re CHICAGO SOUTH SHORE AND SOUTH BEND RAILROAD, Debtor.**

**Bankruptcy No. 89 B 5898.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 16, 1989.

Leroy G. Inskeep of Rudnick & Wolfe, Chicago, Ill., Trustee.

## MEMORANDUM

JOHN D. SCHWARTZ, Chief Judge.

On April 7, 1989, the Chicago, South Shore and South Bend Railroad ("South Shore") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.[1] One of the provisions of the Code applicable only to a railroad reorganization requires the appointment of a trustee (§ 1163). The local United States Trustee is to appoint this trustee from a list of five disinterested persons submitted by the Secretary of Transportation. Leroy G. Inskeep, Esq., a partner in the Chicago law firm of Rudnick & Wolfe, has been appointed the trustee ("Trustee").

The Trustee moved pursuant to § 327(a) for an order permitting him to retain as his counsel certain named members of Rudnick & Wolfe, as well as the balance of the firm, except for two partners. The two partners specifically excluded from this representation are David N. Missner and Kenneth A. Skolnick. Both were members of the firm of Schwartz, Cooper, Kolb & Gaynor, Chartered ("Schwartz Cooper") prior to February of 1989.

While at Schwartz Cooper, Missner and Skolnick represented the Chicago, Missouri and Western Railway ("CM & W"), a debtor in its own Chapter 11 proceedings in this court. CM & W is a sister, or brother if you prefer, to the South Shore in that they have the same parent, Venango River Corporation, also a debtor under Chapter 11. Counsel for both the South Shore and the Venango River Corporation demonstrated their awareness of the interrelationship of these entities by filing both cases as related to the CM & W case, which was the first to file.

The CM & W is listed as one of the twenty largest creditors of the South Shore. Both debtor railroads are financed by the same lenders, Citicorp North America, Inc. and Heller Financial, Inc. (hereinafter collectively called "Lenders").

Whether there are other financial arrangements between the two railroads is not yet apparent but it would not surprise the court if this were so. Clearly the possibility of a myriad of problems between the two sister corporations exists. If nothing more, the relationship will require a thorough investigation by the Trustee and his counsel. The court does not know what the CM & W's claim against the South Shore is or will be. The amount is estimated in the Debtor's petition as $450,000.

Mindful of this former representation by Missner and Skolnick, which officially ended on May 24, 1989, the court sought a supplemental memorandum from the Trustee as to the potential for conflict of interest noted.

---

1. 11 U.S.C. § 101 *et seq.* All section references are to the Bankruptcy Code unless otherwise

and sharing of confidences which might be occasioned by this former representation of a related debtor. The Trustee has filed his supplemental memorandum and the court has examined the case law and the literature with respect to the matter. The United States Trustee has filed a comment on the issue and the court has heard statements in open court by those parties desiring to be heard.

The court reached the conclusion that the Trustee may employ the attorneys at Rudnick & Wolfe, provided that Missner and Skolnick are kept completely screened from this case and all related proceedings for as long as any part of the case remains with Rudnick & Wolfe, and entered an order on May 31, 1989 to this effect. (A copy is affixed to this Memorandum as Appendix A.) This Memorandum supports and further explains that order.

The Trustee seeks the employment of Rudnick & Wolfe as of the date of the court's ruling on the question of the employment. The court thinks it best to determine the firm's qualification as of the date of the Trustee's appointment. The relevant factual situation did not change from May 1 to May 26 and in fact Rudnick & Wolfe and the specific lawyers mentioned in the Motion have been hard at work on the various matters presented by a railroad reorganization since the date of the Trustee's appointment.

At the behest of the United States Trustee at the time of his appointment, Inskeep instituted procedures at his law firm to isolate Missner and Skolnick from the South Shore case. These procedures are commonly referred to as a "Chinese Wall". In spite of this requirement, the Trustee continues to put forward Missner and Skolnick as though they are qualified to act as additional counsel to the Trustee. It therefore now falls upon this court to lay completely to rest in the minds and hearts of the Trustee and his attorneys any question remaining that Missner and Skolnick might act as his attorneys. It is the opinion of this court that neither could serve in that capacity and it is the requirement of this court that the Chinese Wall be maintained

as proposed so long as Rudnick & Wolfe or any partner or associate of that firm represents the Trustee.

On April 4, 1988, Missner was retained by the CM & W. This court's order "authorized and directed [the CM & W] to employ Schwartz, Cooper, Kolb & Gaynor Chartered and Malcolm M. Gaynor and David N. Missner, members thereof, together with such members and associates as they may select to work with them or under their supervision, under a general retainer, to represent it as debtor in possession in this proceeding." (Emphasis added.) Among the members they selected to work with them was Skolnick.

Missner has filed an affidavit describing the work performed by the CM & W under this general retainer both by himself and by Skolnick. He states that this work consisted of "only such action as was necessary to maintain *status quo*, pending the appointment of the Trustee, including the following:

a. Applying for entry of an order extending the time to assume or reject unexpired leases;

b. Applying for entry of an order to pay wages, salaries and employee expenses;

c. Applying for entry of an order establishing guidelines for operations of the Debtor's business pending an appointment of a Trustee;

d. Applying for entry of an interim cash collateral Agreed Order, pending the appointment of a Trustee;

e. Applying for entry of an order approving utility service; and

f. Applying for entry of an order rejecting an executory contract relating to rolling stock, but requesting therein that the Trustee, when appointed, be allowed an additional 30 days to evaluate the contracts."

Missner's affidavit states that after the appointment of the trustee for the CM & W, Skolnick performed no further services and Missner "merely supervised the preparation of the Schedules and Statements of Financial Affairs of the CM & W", no mean task. He also appeared at a CM & W fee

hearing. The United States Trustee's investigation of Missner's and Skolnick's activities showed that Missner billed 17 hours and Skolnick billed a quarter of an hour after the appointment of Daniel R. Murray as trustee. (U.S. Trustee's Comment p. 4)

Section 327(a) provides that the Trustee, "with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Adverse interests are not defined in the Code. *In re AOV Industries, Inc.,* 797 F.2d 1004, 1011 (D.C.Cir.1986). Disinterested persons are defined in § 101(13). A disinterested person is one who, inter alia, "(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason."

In short, the inquiry is directed to whether Missner and Skolnick have a material interest adverse to the estate, creditors, or equity security holders of the South Shore that derives from their relationship with the CM & W. *See, In re Star Broadcasting, Inc.,* 81 B.R. 835, 838 (Bankr.D.N.J. 1988). It is the court's opinion that they clearly had such interests while representing the CM & W. The two railroads were owned by the same entity, financed by the same Lenders with cross-guarantees of their respective loans, and are listed as creditors of each other. It is quite obvious to the court that each railroad has material interests adverse to the other. While Missner and Skolnick represented the CM & W, they each had a professional duty of loyalty to the CM & W which includes its owners and creditors, and to whatever interests the CM & W had which were or might be adverse to the interests of the South Shore.

Why Missner and Skolnick did not promptly withdraw from their representation of the CM & W at the time that they changed firms is not for this court to speculate on. It is not unheard of for disagreements to occur and to continue between withdrawing members of a firm and those who remain. Parties, creditors, the public and the court are entitled to rely on the public record as to who represents a party in a proceeding before the court.

The Trustee has argued in his memorandum that "he [Missner] has been effectively out of the case for a year" and that his involvement in the CM & W case was "limited" and "special". Missner placed no such limiting words in the order of employment he prepared. The court is surprised to discover that his role was so limited. Missner is a senior, experienced bankruptcy counsel who was, as he should have been, in a position of trust vis-a-vis the CM & W and its management. His duties may have diminished after the trustee of the CM & W took over but his duty of loyalty did not diminish nor did it disappear with his withdrawal from that representation. *See,* for example, *E.F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 394–95 (S.D.Tex. 1969). The duty of loyalty encompasses more than confidentiality. *See,* Wolfram, Charles, Modern Legal Ethics, West Publishing Co., 1986, pp. 361–62.

It is and remains the opinion of this court that Missner and Skolnick could not now qualify under § 327 or § 101(13) as attorneys for the Trustee of the South Shore. Although § 327(c) may not completely prohibit this representation,

> that does not relax the requirement of disinterestedness. This court is not inclined to measure a degree of disinterestedness or interestedness to see whether it is sufficient to qualify or disqualify. A lack of disinterestedness on the part of a professional, as defined in the Bankruptcy Code, [§ 101(13) ], is, without any exception known to this court, a disqualifying fact. *In re Michigan General Corp.,* 77 B.R. 97, 106 (Bankr.N.D.Tex. 1987), citing *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

Even if the Bankruptcy Code were devoid of restrictions, ethical considerations would prohibit such representation. *See, In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 337–38 (E.D.Pa.1982) (discussing the implications of Canon 5 and Canon 9 of

the Code of Professional Responsibility for the finding of disinterestedness which the court must make under § 101(13)).

Inasmuch as Missner and Skolnick are partners in Rudnick & Wolfe, that firm could not be approved as attorneys for the Trustee without the special measures which were undertaken on May 1, 1989. Disqualification of one attorney in a firm disqualifies the entire firm. (American Bar Association Model Code of Professional Responsibility, Disciplinary Rule 5–105(D); *See also, In re Michigan Interstate Ry. Co., Inc.,* 32 B.R. 327, 330 (Bankr.E.D. Mich.1983); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328 (E.D.Pa.1982); *In re Petro–Serve, Ltd.,* 97 B.R. 856, 861 (Bankr.S.D.Miss.1989)).

The court makes no comment on the appointment of the Trustee himself as that appointment does not require court approval. The court notes only that it was the concern of the United States Trustee and not this court which led to the requirement that Missner and Skolnick be screened from the South Shore case.

The attorneys who currently represent the CM & W are clearly prohibited from representing the South Shore. *In re AOV Industries, Inc.,* 797 F.2d at 1011. If they represented the CM & W simultaneously with representing the South Shore, even for a short period, they would be prohibited from receiving fees in both cases. *Id.,* at 1011–14, *See also, Woods v. City National Bank and Trust Co. of Chicago,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1940); *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 (5th Cir.1986).

■ If Missner's and Skolnick's representation of the CM & W concluded before the Trustee of the South Shore was appointed, as this court now deems proved, then the Seventh Circuit permits the erection of a Chinese Wall to segregate them from their firm's representation of the South Shore.[2] The Seventh Circuit allows an exception to disqualification of a firm in the case of prior representation of an adverse interest by some members of the

firm as long as those members are screened from the case. *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1267 (7th Cir.1983). In such a case, the firm may be permitted to represent the Trustee but only if the Chinese Wall is deemed adequate to insure that information is not shared. *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 259 (7th Cir.1983).

The Chinese Wall can only be deemed adequate if it includes "specific institutional mechanisms" designed to insure segregation of the screened attorneys from the work and from those performing the work. *Id.,* at 258–59. The mechanisms approved by the Seventh Circuit include: (1) denial of access to the files or documents relating to the case in question; (2) prohibition of any discussion of the case in the presence of the screened attorneys; (3) the disqualified attorneys receive no fees or share of the fees derived from the case; and (4) the screening mechanisms were established at the time the firm took the case. *Id.,* at 259.

■ The Chinese Wall, as implemented by Rudnick & Wolfe, includes the following features described in the Trustee's supplemental memorandum. (1) Missner and Skolnick were immediately screened from discussions concerning the case with and among attorneys assigned to the South Shore matter and from viewing documents related to the case as soon as the Trustee was nominated. (2) A "prophylactic memorandum" was circulated to all personnel "institutionalizing that screening" and members of the bankruptcy group were advised of the screening in person. (3) The files are kept in a separate area, guarded by Philip Martino, an attorney, and his secretary. Missner and Skolnick are not to be allowed access to this area.

Seymour Simon, a former Justice of the Illinois Supreme Court and presently a member of Rudnick & Wolfe, represented to the court that it is he who is responsible for the maintenance of the Chinese Wall required by the United States Trustee and

---

2. Other Circuits would probably be more strict. *See 40 Business Lawyer,* 631, 644–46 (Feb.1985); *Cheng v. GAF Corp.,* 631 F.2d 1052 (2nd Cir. 1980).

now this court. He reiterated the measures noted above and added that the following additional procedures have been established to further implement the Chinese Wall. He has personally explained the importance of screening Missner and Skolnick from this case to the entire bankruptcy group at the firm and required all personnel to sign confirmations of their understanding of its importance. He has advised the group that if any one of them know of or suspect a breach of the screening procedures, he or she must report it immediately to him, hopefully, the court adds, confidentially. Justice Simon would then investigate the possible breach as a matter of his own duty to this court. All documents related to the South Shore case will be kept in a separate room and Martino's secretary will keep a record of persons removing them. Missner and Skolnick and their secretaries have been instructed to refer all incoming calls relating to the South Shore case to Justice Simon. Finally, the firm has established a special word processing code which restricts access to its computer system and which also reveals the identity of persons accessing the system. These measures constitute the specific mechanisms prescribed by the Seventh Circuit.

The United States Trustee has been assured by the Trustee that if any litigation develops between the CM & W and the South Shore, the Trustee will hire special counsel for that matter. In general, the Trustee will carefully examine any areas in which potential disputes between the two railroads might arise and, if necessary, bring them to the attention of the court.

No mention or disclosure has been made in the Trustee's filings of Missner's and Skolnick's personal financial interest in either proceeding. No disclosure has been made to the court as to arrangements with respect to fees that the former members of Schwartz Cooper may receive from the CM & W representation. The court considers it inappropriate to assume that Missner's and Skolnick's withdrawal, either from Schwartz Cooper or from the CM & W case, means that they will have no claim to fees from that case. Also, neither the Trustee's original nor the supplemental memorandum makes mention of how Missner and Skolnick are to share with their present partners in the fees Rudnick & Wolfe are likely to receive from representing the Trustee. Since fees must be approved by this court, the court will inquire at that time into the effectiveness of the Chinese Wall and particularly into how fees are to be shared.

The United States Trustee's comment states his view that the Chinese Wall must be logically extended to disallow the sharing of fees from the South Shore case with Missner and Skolnick. If the court were to determine the matter at this time, it would agree that Missner and Skolnick should be prohibited from receiving fees directly or indirectly from this case. Such a determination would, of course, not apply to the CM & W case.

The court has received an affidavit from Missner stating that he has learned nothing confidential about the South Shore's debt to the CM & W and has discussed nothing of the CM & W with members of his present firm. The court has received no such affidavit from Skolnick. The court is of the opinion that such an affidavit should be supplied. Skolnick will file such an affidavit within ten (10) days.

The Trustee and his attorneys should note that the trustee of the CM & W as well as the representative of the Lenders have both given their consent to the employment of Rudnick & Wolfe on condition that the Chinese Wall be maintained.

The screening measures undertaken by Rudnick & Wolfe appear to the court to be adequate if consistently followed throughout this case. It is impossible for the court or the public to know what goes on inside a law firm. The court has every right and reason to assume without question that these honorable men and women will keep to the conditions of their employment as herein outlined.

### APPENDIX A

#### Order No. 28

This matter having come on for hearing on May 26, 1989 at or about the hour of

**16**

9:30 a.m., pursuant to the Motion presented on May 12, 1989, by Leroy G. Inskeep, the duly appointed and acting Trustee of the Debtor, to retain as his counsel Leroy G. Inskeep, Salvatore A. Barbatano, Douglas J. Lipke, Philip V. Martino and other lawyers and paralegals of the firm of Rudnick & Wolfe, excluding David N. Missner and Kenneth A. Skolnick, (hereinafter "Trustee's Motion to Retain Counsel"), due notice thereof having been given as directed by the Court and the Court having examined the Motion to Retain Counsel and the Trustee's Supplemental Memorandum and having been otherwise advised in the premises by counsel desiring to be heard, and the Court having advised the Trustee that it will file a Memorandum Opinion in connection with the Motion to Retain Counsel; the Court hereby enters the following findings in accordance with the Court's statement in open court:

1. The notice and opportunity for hearing given in connection with the Trustee's Motion to Retain Counsel were adequate and proper under the circumstances of this proceeding.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. No written objections have been filed with the Court or the Trustee or oral objections asserted in open court with respect to the Trustee's Motion to Retain Counsel.

4. This Order shall constitute a final order within the meaning of 28 U.S.C. § 157(b)(1).

NOW THEREFORE IT IS ORDERED:

A. The Trustee's Motion to Retain Counsel is hereby granted and the Trustee is authorized and empowered under the provisions of § 327 of the Bankruptcy Code (11 U.S.C. § 327) and the Bankruptcy Rules to employ Leroy G. Inskeep, Salvatore A. Barbatano, Douglas J. Lipke, Philip V. Martino and the other lawyers and paralegals of the firm of Rudnick & Wolfe, excluding David N. Missner and Kenneth A. Skolnick, as his counsel subject at all times to the maintenance of restrictions on communications between the Trustee and his attorneys and the said David N. Missner and Kenneth A. Skolnick, it being the intention of this Order that the Trustee and his counsel, including all the partners, associates and employees of the law firm of Rudnick & Wolfe, shall maintain a "Chinese Wall" as described and in the manner presented to the Court by Mr. Justice Simon on May 26, 1989, and that the maintenance of these restrictions shall continue throughout the term of the employment of Rudnick & Wolfe or any partner or associate as counsel for the Trustee, the court noting that the "Chinese Wall" came into effect at Rudnick & Wolfe on May 1, 1989.

B. The Court reserves ruling with respect to the issue of whether and to what extent, if any, David N. Missner and Kenneth A. Skolnick may share in any compensation hereinafter awarded to Rudnick & Wolfe for services rendered to the Trustee in these proceedings.

C. This Order shall become effective immediately and shall be deemed a final order within the meaning of 28 U.S.C. § 157(b)(1).

D. The Trustee is directed to serve a copy of this Order on all parties of record within five (5) days.

Dated: May 31, 1989